**Mary Alicia (Dowell) RUPERT,**
**Appellant,**

v.

**Wesley J. McCURDY, Jr., Appellee.**

**No. 05–02–01879–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 24, 2004.

Victoria Eileen Ingham, Redwine, Mabary & Ingham, Sherman, for Appellant.

Barrett Keith Brown, Law Office of Barrett Keith Brown, Sherman, for Appellee.

Before Justices MOSELEY, RICHTER, and FRANCIS.

## OPINION

Opinion by Justice MOSELEY.

This case involves the standing of a party to pursue a suit affecting the parent-child relationship (SAPCR). The trial court's judgment named appellee Wesley J. McCurdy, Jr. as possessory conservator of the child, J.C.D., granted Wesley standard visitation rights pursuant to the family code, and ordered Wesley to pay child support. It is undisputed that Wesley is not J.C.D.'s parent, grandparent, or other relative.

The family code provision governing Wesley's standing provided at that time: "An original suit may be filed at any time by: ... a person who has had actual care, control, and possession of the child for not less than six months preceding the filing of the petition." *See* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20 § 1, 1995 Tex. Gen. Laws 113, 125, *amended by* Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 2, 1999 Tex.

Gen. Laws 4696 (current version at Tex. Fam.Code Ann. § 102.003(a)(9) (Vernon Supp.2004–2005)).

J.C.D.'s mother, Mary Alicia (Dowell) Rupert, appeals the judgment. In two issues, she contends that Wesley lacked standing to seek the rights of a possessory conservator and visitation because he never filed a pleading alleging a SAPCR, and, if he did, he failed to do so within the time requirements of section 102.003(a)(9).

Wesley did not file a pleading alleging a SAPCR. His first and only indication that he desired to be named J.C.D.'s possessory conservator was set forth in a motion for new trial (which the trial court granted). The evidence is undisputed that Wesley did not have actual care, control, and possession of J.C.D. for not less than six months immediately preceding the date he filed his motion. Therefore, assuming without deciding that Wesley's motion for new trial could be construed as a petition alleging a SAPCR, we nevertheless conclude the evidence is undisputed that Wesley lacked standing under the family code. Absent Wesley's standing to file a SAPCR, the trial court had no jurisdiction to render judgment as to possessory conservatorship, visitation, and child support. Therefore, we sustain Mary's issues, vacate the portion of the judgment relating to those matters, and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

J.C.D. was born on March 10, 1996. Mary and J.C.D. moved in with Wesley a month or two later and moved out in January 1999. It is undisputed that Wesley is not J.C.D.'s biological or adoptive father and is not otherwise related to J.C.D.

On March 26, 1999, Mary filed an original petition for divorce, requesting a determination of whether she and Wesley had a common-law marriage and, if so, to grant a divorce, order a division of the community property, and confirm her separate property. On April 15, 1999, Wesley filed an answer denying he and Mary were ever married. However, if the court found a marriage existed, Wesley requested that the court confirm his separate property and reimburse Wesley's separate estate for funds expended to benefit or enhance the community estate. Neither pleading raised any issue as to J.C.D.

The court held a hearing on the divorce proceeding.[1] On June 9, 1999, the trial court signed an "Order Declaring No Common–Law–Marriage." In the order, the trial court declared that there was never a marriage between Mary and Wesley and denied Mary's petition for divorce. The trial court confirmed as Mary's and Wesley's separate property all property items that were in the respective possession of each party. The order provided for a "mutual injunction" relating to communications between Mary and Wesley. However, it also provided for "mutual injunction relaxed to allow visitation" of Wesley with J.C.D. The "reasonable access and visitation" was to be "mutually agreeable" between Mary and Wesley. The order provided: "The Court further finds that [Mary] and [Wesley] have agreed that such visitation and access by [Wesley] with [J.C.D.] shall not amount to 'standing' under the Texas Family Code."

On June 29, 1999, Wesley timely filed a motion for new trial. In his motion, he asserted—for the first time and contrary to what he said in his original answer—

---

1. Apparently the hearing was held April 19, 1999. There is no reporter's record of that hearing in the record on appeal.

that a common-law marriage *did* exist between himself and Mary. Wesley also asserted in the motion that J.C.D. had been in Wesley's "care, custody, and control" for over three years, and that Wesley therefore had standing under section 102.003(a)(9) of the family code to be named a possessory conservator of J.C.D. with the rights of a conservator, which Wesley requested.

The trial court heard Wesley's motion for new trial on August 2, 1999.[2] On August 6, 1999, the trial court signed an "Order Granting Motion for New Trial and Temporary Orders." In this order, the trial court expressly "vacated and set aside in all things" its June 9 order. The trial court appointed Mary temporary sole managing conservator and Wesley temporary possessory conservator of J.C.D., with specified rights and duties. The order also provided for "possession of [J.C.D.] at all times as the parties may mutually agree and, in the absence of mutual agreement," on alternate weekends, beginning August 7, 1999. Further, the order provided that Wesley pay child support.

Thereafter, neither party filed additional pleadings, although the record shows that the trial court granted two motions for withdrawal and substitution related to Mary's attorneys. On August 8, 2002, three years after the court signed the "Order Granting Motion for New Trial and Temporary Orders," the court held a final hearing. At the beginning of the hearing, Mary made an oral motion for dismissal, on grounds that Wesley had no standing to assert a SAPCR because "no petition was ever filed within the time constraints of 102.003." According to Mary: "And that is our standing [sic], the Court has no jurisdiction." The court overruled the motion.

Wesley testified that he, Mary, and J.C.D. lived together "as a family" from April or May 1996 until January 1999, when they "split up." Wesley agreed with the statement that "[t]he Court did find [i.e., at the August 2, 1999 hearing] that you had standing to participate in the child's life because you had lived with him for more than six months." Wesley was then asked by his counsel, "When did you first come to court to get that standing, to get that visitation [ ]?" Wesley responded it was August 2, 1999, about three years previously. Counsel asked Wesley, "[W]hat kind of visitation are you actually exercising now?" Wesley replied, "Saturday morning from 9:00 AM till Sunday at 6:00 PM." His counsel also asked "What about holidays and special events, and those sort of things, are you getting those?" Wesley replied, "I have tried, but nothing." Wesley agreed that he wanted "to expand this to standard, like, pick [ ] him up on Friday at 6:00 till Sunday at 6:00 and give us 30 days in the summer" unless Wesley and Mary lived more than 100 miles apart. Wesley's counsel made the statement: "All we're asking for is the visitation we [sic] have been having." There was testimony that Wesley paid the child support ordered by the court.

Mary testified that Wesley called her for "three or four months" after she moved out, that he wanted to see J.C.D., and that saw him "on occasion." Mary testified that visitation had continued since August 1999.

On August 30, 2002, the trial court signed the "Final Order Establishing Possessory Conservator Rights and Visitation." The final order recited that the case came on for final hearing on August 8, 2002. The final order's provisions as to Wesley's rights to J.C.D., including posses-

---

2. There is no reporter's record of that hearing in the record on appeal.

sory conservatorship and visitation, were substantially the same as in the temporary order. The final order also included provisions regarding child support, as did the temporary order. The final order made no mention of divorce or property division issues. However, it stated: "It is ordered that all relief requested in this case and not expressly granted is denied."

In its findings of fact, the trial court found that Wesley had actual care, control, and possession of J.C.D. for more than six months; and that Wesley first sought visitation of J.C.D. within ninety days of the date of separation, i.e., January 1999. The trial court also made conclusions of law: Wesley had standing to pursue possessory conservatorship of J.C.D. pursuant to section 102.003; and it was in J.C.D.'s best interest that possessory conservatorship with all rights that apply thereto be established in Wesley with regard to J.C.D.

## DIVORCE AND PROPERTY ISSUES

The final order made no express mention of divorce or property division issues. However, it "ordered that all relief requested in this case and not expressly granted is denied." Thus, the trial court effectively denied Mary's claims for a declaration that she was not married to Wesley, as well as her claims, in the event they were married, for divorce, division of community property, and confirmation of her separate property. The judgment also effectively denied Wesley's claims, in the event they were married, for confirmation of his separate property and reimbursement of his separate property estate. Neither party complains of these determinations on appeal. Thus, we affirm the trial court's judgment as to these issues.

## RIGHTS OF POSSESSORY CONSERVATOR, VISITATION, AND CHILD SUPPORT

Under her first issue, Mary argues that there was no evidence that Wesley ever filed suit to establish his rights as possessory conservator, seek visitation, or pursue any other type of relief in this matter, and therefore he did not meet the requirements for standing of section 102.003(a)(9). Under her second issue, she argues Wesley did not meet the time requirement of section 102.003(a)(9). In light of the trial court's findings of fact and conclusions of law and the version of section 102.003(a)(9) applicable to this case, we construe Mary's arguments to be that there is no evidence to support the trial court's determination that Wesley had standing to pursue SAPCR-related relief and, even if the findings of fact are correct, the trial court's conclusion of law as to whether Wesley had standing to file a SAPCR or raise parent-child issues as a counterclaim in the divorce action under section 102.003(a)(9) of the family code is incorrect as a matter of law, and thus that the trial court had no jurisdiction to order possessory conservatorship and visitation.

### Standard of Review

 Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). The standard of review applicable to subject matter jurisdiction also applies to standing. *Id.* at 446. Under that standard, the pleader is required to allege facts affirmatively demonstrating the trial court's jurisdiction to hear the case. *Id.* On review, appellate courts "construe the pleadings in favor of the plaintiff and look to the pleader's intent." *Id.* A party's standing to pursue a cause of action is a question of law. *Coons–Andersen v. Andersen*, 104 S.W.3d 630, 634 (Tex. App.-Dallas 2003, no pet.). Consequently, we review the trial court's actions de novo.

*Id.* (citing *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998)). We review the trial court's factual findings for legal and factual sufficiency and review the trial court's legal conclusions de novo. *See BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002) (discussing standard of review in personal jurisdiction).

### Discussion

 Pleadings are composed of petitions and answers. *Elliott v. Elliott,* 797 S.W.2d 388, 391–92 (Tex.App.-Austin 1990, no writ); *see* TEX.R. CIV. P. 45 (providing that petition shall consist of "a statement in plain and concise language of the plaintiff's cause of action"). A pleading determines the issues upon which parties go to trial. *Crain v. San Jacinto Sav. Ass'n,* 781 S.W.2d 638, 639 (Tex.App.-Houston [14th Dist.] 1989, writ dism'd w.o.j.). Its purpose is to put the opposing party on notice of the character of evidence that she will be called upon to meet and place parameters on the forthcoming contest. *Id.*

 In contrast, a motion is an application for an order. *Id.* at 638. Motions may be accepted or rejected by the court, whereas pleadings, if they sufficiently predate the trial, may be submitted and amended freely by the parties without the necessity of court approval. *Id.* at 639 (citing rule of civil procedure 63). Accordingly, motions are not the functional equivalents of pleadings because insufficient similarities exist between a motion and a pleading to allow them to carry the same legal significance. *Kenseth v. Dallas County,* 126 S.W.3d 584, 602 (Tex.App.-Dallas 2004, pet. filed); *In re City of San Benito,* 63 S.W.3d 19, 25 (Tex.App.-Corpus Christi 2001), *rev'd in part & aff'd in part by City of San Benito v. Rio Grande Valley Gas Co.,* 109 S.W.3d 750 (Tex.2003); *Jobe v. Lapidus,* 874 S.W.2d 764, 765–66 (Tex.App.-Dallas 1994, writ denied); *Crain,* 781 S.W.2d at 639.

Even though Mary's original petition alleged that there was no "child of the marriage," and even though neither that petition nor Wesley's original answer raised any child-related issues, the record shows that the issue of Wesley's visitation with J.C.D. was brought up early in the divorce proceeding. The June 9, 1999 order provided for Wesley's "reasonable access and visitation" to J.C.D. "as may be mutually agreeable between" Mary and Wesley; however, the order also stated that the parties "agreed that such visitation and access ... shall not amount to 'standing' under the Texas Family Code."

Wesley's June 29, 1999 motion for new trial requested that Wesley be named as a possessory conservator of J.C.D. with the rights of a conservator pursuant to section 102.003(a)(9), the family code's standing provision. This motion asked the trial court to set aside the prior judgment in order to retry the common-law marriage issue and to try, for the first time, Wesley's request to be named possessory conservator, a request that was made for the first time in the motion. *See* TEX. FAM.CODE ANN. § 101.032(a) (Vernon 2002) (defining a suit affecting the parent-child relationship (SAPCR) as "a suit filed as provided by this title in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested"); § 102.002 (Vernon 2002) (providing that "[a]n original suit begins by the filing of a petition as provided by this chapter"). The trial court granted this motion; in the same order it appointed Wesley as temporary possesso-

ry conservator and provided for visitation and child support.[3]

We acknowledge that Wesley's motion for new trial contained at least "a statement in plain and concise language" that he requested to be named J.C.D.'s possessory conservator. *See* TEX.R. CIV. P. 45. However, Wesley's motion for new trial did not meet the requirements of section 102.008, which specifies the contents of a petition and all other documents in a SAPCR. *See* TEX. FAM.CODE ANN. § 102.008 (Vernon 2002). Further, Wesley never filed a pleading or amended pleading meeting those requirements, or alleging or seeking to allege a SAPCR.

We note that the Tyler Court of Appeals has held that we should "indulge a liberal construction of pleadings and pretrial procedures in suits affecting the parent-child relationship." *In re Pringle*, 862 S.W.2d 722, 724 (Tex.App.-Tyler 1993, no writ). However, we need not decide whether Wesley's motion for new trial may be construed as a petition alleging a SAPCR, because even if it were so construed, it is undisputed that when Wesley filed it he did not meet the requirements for standing under section 102.003(a)(9).

Under the applicable version of section 102.003(a)(9), Wesley had standing to file a SAPCR if he "had actual care, control, and possession of the child for not less than six months preceding the filing of the petition." Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20 § 1, 1995 Tex. Gen. Laws 113, 125 (amended 1999) (current version

at TEX. FAM.CODE ANN. § 102.003(a)(9)).[4] This section should not be interpreted to be "mechanistic" in application. *Jones v. Fowler*, 969 S.W.2d 429, 433 (Tex.1998) (per curiam). However, the six-month period of actual care, control, and possession required by subsection (9) "must *immediately* precede the filing of the petition." *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001) (emphasis added) (citing *Jones*, 969 S.W.2d at 433).

Accordingly, Wesley had the burden to prove that he "had actual care, control, and possession of [J.C.D.] for not less than six months preceding" June 29, 1999, the date he filed his motion for new trial, that is, between December 29, 1998 and June 29, 1999. *See id.; In re Pringle*, 862 S.W.2d at 725; *Williams v. Anderson*, 850 S.W.2d 281, 283–84 (Tex.App.-Austin 1993, writ denied). In other words, even if Wesley at some point had actual care, control, and possession of J.C.D. for at least six months, the proper inquiry is whether he did so for the six-month period immediately before he filed his petition. *See Sherry*, 46 S.W.3d at 861.

There was evidence that Wesley had "occasional" visits with J.C.D. between January and June 1999, and "contact and access" pursuant to the June 9, 1999 order. "Occasional visitation with or possession of a child, however, is not 'actual care, control, and possession' under the statute and does not satisfy section 102.003(a)(9)'s strict time requirement." *Coons–Ander-*

---

3. The August 6, 1999 order also set aside the June 9 order.

4. The 1999 amendment re-wrote section 102.003(a)(9) as follows: "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." The 1999 amendment applied only to a SAPCR filed on or after September 1,

1999, the effective date of chapter 1390. *See* Act of May 30, 1999, 76th Leg., R.S., ch. 1390, § 51(a), (c), 1999 Tex. Gen. Laws 4696, 4710. "A suit filed before the effective date of the Act is governed by the law in effect on the date the suit was filed, and the former law is continued in effect for that purpose." *Id.* § 51(c). Wesley's motion for new trial was filed on June 29, 1999. Accordingly, the 1999 amendment does not apply to this case.

*sen*, 104 S.W.3d at 634 (citing *Sherry*, 46 S.W.3d at 861); *see Williams*, 850 S.W.2d at 283–84.

It is also true that the August 6, 1999 order granted Wesley possession of J.C.D. on alternate weekends, and there is evidence that Wesley had actual possession on weekends for a three-year period pursuant to that order. However, that possession is irrelevant to the issue of standing pursuant to section 102.003(a)(9), which requires care, control, and possession for the designated period immediately *before* the filing of a SAPCR. *See* Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20 § 1, 1995 Tex. Gen. Laws 113, 125 (amended 1999) (current version at TEX. FAM.CODE ANN. § 102.003(a)(9)).

Further, even though *Jones* states that section 102.003(a)(9)'s requirement for standing is not to be applied "mechanistically," we conclude there is no evidence Wesley met such a less "mechanistic" standard. *Jones* refers to *T.W.E. v. K.M.E.*, 828 S.W.2d 806, 808 (Tex.App.-San Antonio 1992, no writ), as an example of this standard. In *T.W.E.*, a three-week interruption between actual possession and the putative father's counterclaim for custody (or the mother's divorce suit, the opinion is not clear) did not destroy the father's standing to seek custody. *Id.* The supreme court held that the "policy and reasoning" of section 102.003(a)(9) require " 'expeditious action by the claimant, who should act with all due, deliberate, reasonable speed.' " *Jones*, 969 S.W.2d at 433 (citation omitted).

*Jones* refers to the exact length of time before "it's 'too late' " as a matter for the trial court's "discretion." *Id.* But it is undisputed that here Wesley did not seek (or assert that he wanted to seek) possessory conservatorship until he filed his motion for new trial—five months after Mary and J.C.D. moved out, three months after

Mary filed suit, approximately eleven weeks after Wesley filed an answer, approximately ten weeks after the court held a hearing on the case, and twenty days after the trial court entered a final judgment (later set aside) stating that Wesley's agreed visitation and access to J.C.D. would not amount to standing under the family code.

Thus, it is undisputed that Wesley did not file his motion for new trial within the time requirement of section 102.003(a)(9). Further, we cannot conclude that Wesley acted "with all due deliberate, reasonable speed" to raise any SAPCR-related claims. Therefore, even if the trial court could have properly construed the Wesley's motion as a pleading asserting a SAPCR, an issue we do not reach, the trial court erred in concluding that Wesley had standing to seek possessory conservatorship, visitation, and child support. Without standing pursuant to section 102.003(a)(9), the trial court was without jurisdiction to conclude that it was in J.C.D.'s best interest that possessory conservatorship, with all rights and responsibilities that apply thereto, be established in Wesley with regard to J.C.D. *See* TEX. FAM.CODE ANN. § 151.001 (Vernon Supp.2004–2005) (describing rights and duties of parent, including possession and support). Accordingly, we resolve Mary's first and second issues in her favor.

## CONCLUSION

Because of our disposition of Mary's issues, we vacate the sections of the "Final Order Establishing Possessory Conservator Rights and Visitation" labeled *Conservatorship, Possession,* and *Child Support.* As modified, we affirm the trial court's judgment.