257 S.W.3d 804 (2008)
In the Interest of M.P.B.
No. 05-07-00093-CV.
Court of Appeals of Texas, Dallas.
June 20, 2008.
*807 Cynthia L. Stagner, Edward C. Green, Denison, TX, for Appellant.
Georganna L. Simpson, Law Offices of Georganna L. Simpson, Dallas, Donald Linous Jarvis, Attorney At Law, Sherman, TX, for Appellee.
Donald Linous Jarvis, for Jerry Britt.
Before Justices MORRIS, WRIGHT, and MOSELEY.

OPINION
Opinion by Justice WRIGHT.
M.P.B.'s father appeals the trial court's order appointing M.P.B.'s grandmother as the non-parent primary joint managing conservator and Father as a parent joint managing conservator. In three issues, Father contends (1) Grandmother did not have standing to bring suit, (2) the trial court denied him the right to a jury trial, and (3) Grandmother failed to overcome the statutory presumption that it is in a child's best interest to have custody awarded to a parent. We overrule Father's issues and affirm the trial court's order.

Background
M.P.B. was born April 19, 2003 in Texas. On June 25, 2003, the trial court entered an order declaring Father as the father of M.P.B., and appointing Mother and Father as joint managing conservators with Mother as the primary conservator. Mother and M.P.B. lived with Grandmother for a short time, and then in an apartment near Grandmother's house. Father moved to California and had limited contact with M.P.B. When M.P.B. was twenty months old, Mother died in a house fire. A few days later, Grandmother filed suit seeking appointment as the primary conservator of M.P.B. Thereafter, Father filed a petition for writ of habeas corpus seeking possession *808 of M.P.B. After the trial court denied Father's petition for writ of habeas corpus, Father countersued seeking to be appointed primary managing conservator. Father also filed a motion to dismiss Grandmother's petition on the grounds that she lacked standing to file an original suit seeking conservatorship, which, after a hearing, the trial court denied. In the meantime, M.P.B's grandfather, Grandmother's ex-husband, and his wife intervened seeking visitation one weekend a month. Following a bench trial, the trial court appointed Grandmother as the non-parent primary joint managing conservator with the exclusive right to designate M.P.B.'s primary residence, and Father as a parent joint managing conservator. The trial court also ordered visitation one weekend a month for Grandfather.[1] This appeal followed.

Standing
In his first issue, Father contends Grandmother lacked standing to file an original suit requesting appointment as a joint managing conservator. Grandmother responds that she has standing to file an original suit affecting the parent-child relationship pursuant to section 102.003(a)(9) and section 102.004(a)(1) of the family code. After reviewing the record, we agree with Grandmother that she has standing to file an original suit under section 102.003(a)(9).
The question of who has standing to bring an original suit affecting the parent-child relationship seeking managing conservatorship is a threshold issue. In re SSJ.-J, 153 S.W.3d 132, 134 (Tex.App.-San Antonio 2004, no pet.); In re Pringle, 862 S.W.2d 722, 724 (Tex.App.-Tyler 1993, no writ). Standing is a component of subject matter jurisdiction and is a constitutional prerequisite to maintaining a lawsuit under Texas law. Rupert v. McCurdy, 141 S.W.3d 334, 338 (Tex.App.-Dallas 2004, no pet.) (citing Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443-44 (Tex. 1993)). Standing focuses on who is entitled to bring an action and is determined at the time suit is filed in the trial court. See M.D. Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 708 (Tex.2001); Rupert, 141 S.W.3d at 340. A party's standing to pursue a cause of action is a question of law. Rupert, 141 S.W.3d at 338. A court deciding a plea to the jurisdiction should consider evidence and review the substance of the legal claims only to the extent necessary to determine whether subject-matter jurisdiction over the case exists. See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex.2000). When, as here, the trial court makes no separate findings of fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment. See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990). We review the trial court's implied factual findings for legal and factual sufficiency, and we review the trial court's implied legal conclusions de novo. See id. at 339.
Section 102.003(a)(9) of the family code provides that "a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition" may file an original suit requesting managing conservatorship. See TEX. FAM.CODE ANN. § 102.003(a)(9) (Vernon Supp.2007). "In computing the time necessary for standing under Subsections (a)(9), (11), and (12) the court may not require that the time be continuous and uninterrupted, but shall consider the child's principal residence during the relevant *809 time preceding the date of commencement of the suit." TEX. FAM.CODE ANN. § 102.003(b) (Vernon Supp.2007). A "principal residence" is (1) a fixed place of abode; (2) occupied consistently over a substantial period of time; (3) which is permanent rather than temporary. Doncer v. Dickerson, 81 S.W.3d 349, 362 (Tex. App.-El Paso 2002, no pet.) (citing Snyder v. Pitts, 150 Tex. 407, 241 S.W.2d 136, 141 (1951) (articulating elements of residence under general venue statute)). A determination of standing under this section is necessarily fact specific and resolved on an ad hoc basis. Doncer, 81 S.W.3d at 362.
Here, the record shows that when Grandmother filed suit on January 26, 2005, M.P.B. was twenty-one-months old. M.P.B. lived with Mother at Grandmother's house for about three months before moving to a nearby apartment in June 2003. After that time, M.P.B. continued to have her own room at Grandmother's house and spent "significant" periods of time with Grandmother. Grandmother explained that M.P.B. spent more time at Grandmother's house than she did at Mother's apartment. Grandmother testified that M.P.B. spent "every weekend of her life" at Grandmother's. The weekends "may start on Thursday or they may start on Friday. We always go through Sunday and we would always have her one other night during the week on a Wednesday." In fact, M.P.B. was with Grandmother at her house when Mother was killed in the house fire. Grandmother further testified that if she was off of work for "spring break or for vacation in the summer or Christmas break, [M.P.B.] is always with us." When Grandmother took "three weeks at Christmas ... [and] an additional week of vacation, M.P.B. was with us the whole time."
According to Grandmother, M.P.B. spent more time at her house than at Mother's apartment. Grandmother also testified she was significantly involved in "raising" M.P.B. She clothed her, taught her to do her ABC's and to spell her name, and was "as much a primary caregiver, if not more" than Mother. This pattern was from M.P.B's birth until Mother's death.
After reviewing the record in this case, we conclude the evidence is legally and factually sufficient to support the implied findings there were at least six months when Grandmother had actual care, control, and possession of M.P.B and there were at least six months when M.P.B's principal residence was Grandmother's home. Although Grandmother's actual care, control, and possession of M.P.B. was not exclusive, with Mother's consent, Grandmother provided M.P.B. with a fixed place of abode, occupied consistently over a substantial period of time, that was permanent rather than temporary. The record does not suggest this pattern of possession and caregiving was intended to be a temporary arrangement to facilitate momentary housing difficulties, inconvenient travel schedules, the pursuit of higher education, or the inability to provide child care. Thus, we conclude that under the specific facts of this case, the evidence is sufficient to support the trial court's threshold determination that Grandmother had standing to file an original suit requesting managing conservatorship. See Doncer, 81 S.W.3d at 361-62 (step-mother acquired standing under section 102.003(a)(11) by establishing child's principal residence was with her and father one-half of the time over a two-year visitation cycle).
In reaching this determination, we necessarily disagree with Father's contention that Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and In re Karen Mays-Hooper, 189 S.W.3d 777 (Tex.2006), require a different conclusion. *810 Both Troxel and Mays-Hooper involved grandparent visitation. In Troxel, the United States Supreme Court determined a Washington statute that allowed any person to petition the court for visitation rights at any time and authorized the court to grant visitation rights if it was in the best interest of the child was unconstitutional because, in the absence of any special factors justifying the State's interference, the statute, as applied, violated the mother's fundamental right to make decisions concerning the rearing of her two daughters. See Troxel, 530 U.S. at 68, 120 S.Ct. 2054. In Mays-Hooper, the Texas Supreme Court applied Troxel to essentially the same facts and determined a grandmother was not entitled to visitation when there was no evidence the mother was unfit, the child's health or emotional well-being would suffer from the mother's decision regarding visitation with the grandmother, or that the mother intended to completely exclude grandmother's access to the child. Mays-Hooper, 189 S.W.3d at 777-78. Because the issue in this case is whether Grandmother had standing under section 102.003(a)(9) of the Texas Family Code to file suit requesting appointment as a managing conservatorship of M.P.B., or stated another way, whether Grandmother has standing to file suit because there are special circumstances warranting interference with Father's parental rights to primary care, custody, and control of M.P.B., Father's reliance on Troxel and Mays-Hooper is misplaced. We overrule Father's first issue.

Jury Trial
In his second issue, Father contends the trial court denied him his right to a jury trial. Specifically, Father complains the trial court required him to withdraw his request for a jury trial as a condition for granting his motion for continuance. Grandmother responds that Father failed to preserve error for our review. We agree with Grandmother.
After the trial court denied Father's petition for writ of habeas corpus, Father's counsel withdrew and Father proceeded pro se for a period of time. He retained new counsel on October 28, 2005. On November 14, 2005, Father notified counsel the case was set for final trial on December 14, 2005. The next day, counsel filed a motion for continuance seeking time to have a social study prepared and to prepare for trial. On November 22nd, Father filed a jury demand. The trial court conducted a hearing on the motion for continuance on December 9th. At the hearing, both Grandmother's and Grandfather's counsel objected to the jury demand as untimely and to the continuance because the case had been pending for almost a year, they were ready to proceed, and they did not want the jury demand to become timely. During the hearing, the following discussion regarding the jury demand occurred:
THE COURT: What do you want? A social study, or a jury trial, or both?
[FATHER'S COUNSEL]: Your Honor, what I really want is time to get ready for trial and a social study.
* * *
[GRANDFATHER'S COUNSEL]: Are you saying if [we] were to go forward in that regard, then you wouldn't want a jury trial? Is that what you're saying?
[FATHER'S COUNSEL]: He asked me what do you really want. I said an adequate opportunity to meet with my client which I've had one time, to prepare for trial, get a social study and go to trial.

*811 [GRANDFATHER'S COUNSEL]: Still, are you saying  is that what you're saying though?
[FATHER'S COUNSEL]: I will withdraw my jury request if that 
[GRANDFATHER'S COUNSEL]: That's what I was curious about. I was just trying to make sure I knew what he was saying.
* * *
THE COURT: I understand that if I order a social study, you're withdrawing your request for a jury trial; is that correct?
[FATHER'S COUNSEL]: That is correct, Your Honor.
A party is required to act affirmatively to preserve the right to complain on appeal that he was denied his perfected right to a trial by jury. Vardilos v. Vardilos, 219 S.W.3d 920, 923 (Tex.App.-Dallas 2007, no pet.) (citing Sunwest Reliance Acquisitions Group, Inc. v. Provident Nat'l Assurance Co., 875 S.W.2d 385, 387 (Tex.App.-Dallas 1993, no writ)). Even when a party perfects his right to a jury trial in accordance with rule of civil procedure 216, he must "either object on the record to the trial court's action in proceeding without a jury, or indicate affirmatively in the record [he] intends to stand on [his] perfected right to a jury trial to preserve error." Vardilos, 219 S.W.3d at 923. This is because "the right in a civil case is not self-executing: to invoke and perfect the right to a jury trial in a civil case a party must first comply with the requirements of rule 216;" once perfected, "the right to a jury trial still may be waived expressly or by a party's failure to act." Id.; Sunwest Reliance, 875 S.W.2d at 387-88.
Assuming Father timely perfected his jury request, the record before us does not show Father either objected to the case going forward without a jury or affirmatively indicated he intended to stand on his right to a jury trial. And, the record does not show Father was required to withdraw his jury demand as a condition for granting his motion for continuance. Rather, the record shows Father voluntarily withdrew his jury demand. Moreover, the record does not reflect that Father complained to the trial court that he was being "forced" into withdrawing his jury request. Thus, we conclude Father waived any right to complain on appeal about the trial court's alleged error. We overrule Father's second issue.

Primary Managing Conservatorship
In his third issue, Father contends the trial court erred by appointing Grandmother as the primary joint managing conservator. After reviewing the record, we cannot agree.
We review the trial court's decision regarding conservatorship under an abuse-of-discretion standard. See Agraz v. Carnley, 143 S.W.3d 547, 553-54 (Tex. App.-Dallas 2004, no pet.) (most appealable issues in family law cases, including conservatorship, are evaluated for abuse of discretion). Therefore, in reviewing the substance of the trial court's order, we ask whether the court acted without reference to any guiding rules or principles, i.e., whether the order was arbitrary or unreasonable. Id. (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985)). Under the abuse-of-discretion standard, legal and factual insufficiency are not independent grounds for asserting error, but are merely relevant factors in assessing whether a trial court abused its discretion. Niskar v. Niskar, 136 S.W.3d 749, 753 (Tex.App.-Dallas 2004, no pet.). A trial court does not abuse its discretion if some evidence of a substantial *812 and probative character exists to support the trial court's decision. Agraz, 143 S.W.3d at 554. When, as here, no findings of fact or conclusions of law are requested or filed, an appellate court implies all necessary findings in support of the trial court's judgment. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992).
Under this issue, Father first argues the trial court improperly categorized this suit as a chapter 156 modification proceeding rather than a chapter 153 original proceeding, thus avoiding the parental presumption statute contained in section 153.131 of the family code.[2] Grandmother responds this is a suit for modification under chapter 156 of the code, and thus, the section 153.131 presumption does not apply.
The supreme court has explained that chapter 153 and 156 are distinct statutory schemes that involve different issues. In re v. V.L.K., 24 S.W.3d 338, 343 (Tex. 2000). Chapter 156 modification suits raise additional policy concerns such as stability for the child and the need to prevent constant litigation in child custody cases. Id. The Legislature has determined the standard and burden of proof are different in original and modification suits. Id. A natural parent has the benefit of the parental presumption in an original proceeding and the non-parent seeking conservatorship has a higher burden. See TEX. FAM.CODE ANN. § 153.131; V.L.K., 24 S.W.3d at 343; Brook v. Brook, 881 S.W.2d 297, 298 (Tex.1994). However, the Legislature did not impose different burdens on parents and non-parents in modification suits, and it did not express its intent to apply the parental presumption in modification suits. See V.L.K., 24 S.W.3d at 343. Thus, the parental presumption does not apply in a modification proceeding. Id. We recognize the ramifications of the modification statutes can be far-reaching and troubling, but agree with our sister court that any changes to the statutory scheme must come from the Legislature. See In re C.A.M.M., 243 S.W.3d 211, 217 (Tex. App.-Houston [14th Dist.] 2007, pet. filed May 13, 2008).
Moreover, by including the parental presumption in original suits affecting the parent-child relationship but not in suits for modification of conservatorship, the Legislature balanced the rights of the parent and the best interest of the child. C.A.M.M., 243 S.W.3d at 216. On one hand, "the interest of parents in the care, custody, and control of their children" has been described as "perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. Id.(citing Troxel, 530 U.S. at 65, 120 S.Ct. 2054). On the other hand, "it is the public policy of this State to resolve conservatorship disputes in a manner that provides a safe, stable, and nonviolent environment for the child." See C.A.M.M., 243 S.W.3d at 216 (citing TEX. FAM.CODE ANN. § 153.001(a)(2) (Vernon 2002)). When, as here, these two interests compete, the child's interest in stability prevails over the parent's right to primary possession. See C.A.M.M., 243 S.W.3d at 216.
*813 In this case, Father was appointed a joint managing conservator with Mother in the trial court's June 25, 2003 order. After Mother died, Grandmother filed an original suit seeking custody. Because we have concluded Grandmother had standing to file an original suit requesting appointment as a managing conservator, she likewise had standing to file a modification suit. See TEX. FAM.CODE ANN. § 156.002(b) (Vernon 2002) (A person who, at the time of filing, has standing to sue under Chapter 102 may file a suit for modification in the court with continuing, exclusive jurisdiction.); C.A.M.M., 243 S.W.3d at 217 (Because grandparents established standing as required by section 102.003(11), they not only had standing to pursue conservatorship through an original proceeding, but also had standing to seek modification of the prior order.); see also In re P.D.M., 117 S.W.3d 453, 458-62 (Tex. App.-Fort Worth 2003, pet. denied) (holding that prior order appointing managing conservator is prior order for purposes of suit to modify the parent-child relationship, and rejecting argument that death of managing conservator terminated prior conservatorship determination). After first filing the original suit seeking custody, Grandmother later amended her pleading and expressly sought to modify the June 25, 2003 order appointing Father as the joint managing conservator. At trial, the trial court treated the suit as a modification and subsequently entered an order finding it was in M.P.B.'s "best interest" to appoint Grandmother as the primary joint managing conservator and Father as a joint managing conservator. Because the Legislature granted Grandmother standing to file either an original suit or a suit to modify once she met the criteria set out in Chapter 102 of the family code, and because Grandmother expressly sought to modify the prior order of conservatorship, we conclude the trial court did not abuse its discretion by treating this proceeding as a suit for modification to which the parental presumption does not apply. See C.A.M.M., 243 S.W.3d at 217-18; P.D.M., 117 S.W.3d at 456-57.
To the extent Father also contends the record does not support the trial court's determination that it was in M.P.B.'s best interest to appoint Grandmother as primary joint managing conservator and Father as joint managing conservator, we likewise conclude Father's contention lacks merit.
The trial court may modify an order appointing the conservator of a child if modification would be in the child's best interest, and the circumstances of the child or a conservator have materially and substantially changed. See TEX. FAM.CODE ANN. § 156.101 (Vernon Supp.2007). Father does not challenge that the circumstances have materially and substantially changed, but contends Grandmother failed to show it was in M.P.B.'s best interest to appoint Grandmother as primary managing conservator. In determining the best interest of a child, a court may consider: (1) the desire of the child, (2) her emotional and physical needs now and in the future, (3) any emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking primary possession, (5) the programs available to assist these individuals to promote the child's best interest, (6) the plans for the child by those seeking primary possession, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. C.A.M.M., 243 S.W.3d at 221 (citing Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976)). In the specific context of modification of conservatorship, courts also *814 consider (10) the child's need for stability; and (11) the need to prevent constant litigation regarding conservatorship of the child. C.A.M.M., 243 S.W.3d at 221 (citing V.L.K., 24 S.W.3d at 343, and Long v. Long, 144 S.W.3d 64, 68 (Tex.App.-El Paso 2004, no pet.)).
Here, the record shows that Father has a long history of significant drug use, including marijuana, speed, cocaine, and methamphetamine. Father began using drugs at the age of fifteen and continued using them until he was forty-two years old. Grandmother, Grandfather, and Father himself described Father as a "pothead." Father testified he had been to treatment and, at the time of trial, had been "clean" for over two years. However, Terry, who had known Father for thirty years, testified at trial that she had seen him go through periods of "transformation" and he had always fallen back into drug use. Father also has a history of domestic violence with both his first and second wives, and letters he wrote to Mother suggested violence was a concern in his relationship with her. Until Mother died, Father had minimal contact with M.P.B., spending about four hours with her in person and speaking on the telephone. Since moving to Texas about six months before the trial, Father had come each week for the court-ordered supervised visitation at Grandmother's house. In contrast, since M.P.B.'s birth, she spent significant periods of time with Grandmother, had her own bedroom at Grandmother's house, and at the time of trial, viewed Grandmother's house as her home. M.P.B. was attending a Montessori school and doing well. Leigh Walker testified she performed the social study and visited with Father, Grandmother, and Grandfather. Although she agreed with Father's counsel that it was "a close call," she recommended Grandmother be appointed as the primary joint managing conservator and Father as a joint managing conservator. She also recommended Grandfather have visitation with M.P.B. one weekend per month.
Given Father's long history of drug use and violence, with a relatively short period of recovery; Father's lack of involvement in M.P.B.'s life; M.P.B.'s young age; and the recent loss of her mother, we conclude the trial court did not abuse its discretion by determining it was in M.P.B.'s best interest to appoint Grandmother as the primary managing conservator. Although Father appears to have made positive changes in his life and relationships, M.P.B.'s interest in stability prevails over Father's right to primary possession. We overrule Father's third issue.
Accordingly, we affirm the trial court's judgment.
NOTES
[1] Neither Father nor Grandmother challenge this portion of the trial court's order.
[2] Section 153.131(a) provides as follows:

Subject to [a finding of family violence under section 153.004], unless the court finds that the appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.
TEX. FAM.CODE ANN. § 153.131(a) (Vernon 2002).