

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00108-CV

**IN THE INTEREST OF N.I.V.S.** and M.C.V.S., Minor Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-20008
Honorable Janet P. Littlejohn, Judge Presiding

Opinion by:   Rebeca C. Martinez, Justice

Sitting:   Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  March 11, 2015

AFFIRMED

Dino Villarreal appeals the trial court's order dismissing his lawsuit on standing grounds. We affirm the judgment of the trial court.

### BACKGROUND

Villarreal was born Diana Villarreal.  He is transgender, meaning that he[1] was born female but identifies as a male.  He was raised as a boy and then as a man all of his life.  In 1994, Villarreal began a romantic relationship with Sandra Sandoval.  Sandoval knew that Villarreal is transgender and the two moved in together in 1994.  In 2002, Sandoval adopted N.I.V.S. as a newborn.  Both Sandoval and Villarreal were present at the baby's birth.  Two years later, Sandoval adopted M.C.V.S. as a newborn.  The four subsequently lived together as a family.  Both children refer to

---

[1] We refer to Villarreal throughout the opinion as "he" out of respect for the litigant.

Villarreal as their father and do not know that he was born a female. Villarreal is known as the father of the children to family, friends, school officials, and church officials. In 2008, Villarreal quit his job to become a stay-at-home parent and take care of the children, both of whom have special needs.

In January of 2011, Villarreal and Sandoval separated. Villarreal moved out of the family home and the children continued to reside with Sandoval. Villarreal continued to care for the children after school and in the mornings, as well as on weekends.

On or about November 15, 2013, Sandoval refused to allow any further contact between Villarreal and the children. On November 26, 2013, Villarreal obtained an Order to Change Name of an Adult, which changed his name from Diana Villarreal to Dino Villarreal. On December 9, 2013, Villarreal filed a Petition in Suit to Adjudicate Parentage, and a Motion for Temporary Orders. Villarreal further sought appointment of the parties as joint managing conservators and equal periods of possession and access.

On December 16, 2013, Villarreal filed a voluntary statement of paternity with the trial court. In the statement, Villarreal asserted that there is no other court order naming another man as the biological father of the children, and a genetic test has not determined that another man is the biological father of the children. The children do not have an adjudicated, acknowledged, or presumed father; the biological parents' rights were terminated in the adoption proceedings. The trial court heard the Motion for Temporary Orders on the same day and granted Villarreal possession of the children on Christmas Eve. The case was reset to January 6, 2014.

On January 3, 2014, Villarreal obtained a court order changing his identity from female to male.[2] Thereafter, Sandoval filed a "Plea to the Jurisdiction, Motion to Strike for Lack of Subject Matter Jurisdiction, Request for Court to Decline Jurisdiction, and Original Answer" seeking dismissal of Villarreal's lawsuit. On January 6, 2014, Villarreal filed a "Memorandum of Law in Support of Original Petition to Adjudicate Parentage and, In the Alternative, Standing to Seek Custody and Possession and Access." In the memorandum, Villarreal asserted standing to seek custody and possession and access under sections 102.003(a)(8) and 102.003(a)(9) of the Family Code, and also alleged standing under the doctrines of *in loco parentis*, unconsionability and estoppel, and psychological parent. After a hearing, the trial court granted Sandoval's plea to the jurisdiction and denied Villarreal's request for temporary orders. In the order granting the plea to the jurisdiction, the trial court made the following findings:

> [T]hat Villarreal does not have standing to bring a Suit to Adjudicate Parentage pursuant to section 160.602(3) because Villarreal is not a man whose paternity of the child is to be adjudicated;

> [T]hat Villarreal does not have standing to seek conservatorship and possession and access under section 102.003(a)(8), (9) because Villarreal is not a man alleging himself to be the father of a child, and because Villarreal is not a person who has had actual care, control and possession of the child for at least 6 months ending not more than 90 days preceding the date of the filing of the petition.

The trial court did not make any findings regarding Villarreal's theories of standing under the doctrines of in loco parentis, unconsionability and estoppel, and psychological parent. Villarreal requested findings of fact and conclusions of law, and also filed a notice of past due findings of fact and conclusions of law; the trial court did not file any written findings of fact and conclusions of law.

---

[2] *See* TEX. FAM. CODE ANN. § 2.005(8) (West Supp. 2014) (proof of identity and age required to obtain marriage license may be shown by "an original or certified copy of a court order relating to the applicant's name change or sex change").

## STANDARD OF REVIEW

We review the trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *In re J.P.L.*, 359 S.W.3d 695, 708 (Tex. App.—San Antonio 2011, pet. denied). A plea to the jurisdiction challenges the trial court's authority to decide the subject matter of the cause of action. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.). A plaintiff has the initial burden of presenting allegations that affirmatively demonstrate the trial court's jurisdiction to hear a cause. *Miranda*, 133 S.W.3d at 226. When determining if subject matter jurisdiction exists, we look to the plaintiff's live pleadings to determine if the plaintiff has met his burden by pleading facts affirmatively demonstrating the trial court's subject matter jurisdiction. *Id*. We construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Id*.

"Standing must exist at the time a plaintiff files suit and must continue to exist between the parties at every stage of the legal proceedings, including the appeal; if the plaintiff lacks standing at the time suit is filed, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing." *La Tierra de Simmons Familia, Ltd. v. Main Event Entm't, LP*, 03-10-00503-CV, 2012 WL 753184, at *4 (Tex. App.—Austin Mar. 9, 2012, pet. denied) (mem. op.) (citing, in part, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993)); *Martin v. Clinical Pathology Labs., Inc.*, 343 S.W.3d 885, 888 (Tex. App.—Dallas 2011, pet. denied). "Standing is determined at the time suit is filed in the trial court, and subsequent events do not deprive the court of subject matter jurisdiction." *Keane Landscaping, Inc. v. Divine Group, Inc.*, 05-12-00623-CV, 2014 WL 1008120, at *2 (Tex. App.—Dallas Mar. 13, 2014, no pet.) (mem. op.) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9).

**DISCUSSION**

Villarreal contends the trial court erred in granting the plea to the jurisdiction because he has standing under both the Family Code and the common law.

*Suit to Adjudicate Paternity*

Villarreal first argues that the trial court erred by granting Sandoval's plea to the jurisdiction since he had statutory standing pursuant to Texas Family Code section 160.602(a)(3). TEX. FAM. CODE ANN. § 160.602(a)(3) (West 2014). Section 160.602(a), titled "Standing to Maintain Proceeding," provides that a proceeding to adjudicate parentage may be maintained by:

(1) the child;
(2) the mother of the child;
(3) *a man whose paternity of the child is to be adjudicated;*
(4) the support enforcement agency or another government agency authorized by other law;
(5) an authorized adoption agency or licensed child-placing agency;
(6) a representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, is incapacitated, or is a minor;
(7) a person related within the second degree by consanguinity to the mother of the child, if the mother is deceased; or
(8) a person who is an intended parent.

*Id.* § 160.602(a) (emphasis added). The Family Code defines "man" as "a male individual of any age." *Id*. § 160.102(10) (West 2014). The Family Code does not, however, define the term "male." When the legislature fails to define a word or term, we will apply its ordinary meaning. *Monsanto Co. v. Cornerstones Mun. Util. Dist*., 865 S.W.2d 937, 939 (Tex. 1993). Webster's Dictionary defines "male" as "an individual that produces small usually motile gametes . . . which fertilize the eggs of a female." *See* http://www.merriam-webster.com/dictionary/male (last visited Feb. 27,

2015). Black's Law Dictionary defines "male" as "of the masculine sex."[3] BLACK'S LAW DICTIONARY 862 (5th ed.) (1979).

Villarreal contends that because the Texas Family Code and the Texas Constitution are both silent on the term "male," he is not statutorily barred from the assertion that he is, in fact, a man. In addition, he asserts that because a court order was entered on January 3, 2014 changing his identity from female to male, he has standing to bring a suit to adjudicate parentage.

In response, Sandoval argues that to establish standing, Villarreal "needed to conform with Texas Family Code § 160.602 at the time of filing [the suit to adjudicate parentage]." The petition to adjudicate parentage was filed on December 9, 2013, prior to the signing of the court order changing identity on January 3, 2014. Sandoval also appears to argue that as the mother of the children, she has a fundamental interest in determining what is in their best interest, including keeping them away from the person who helped to raise them.

The best interest of the children, however, is not at issue in this appeal. In our review, we are limited to examining whether Villarreal had standing at the time he filed his lawsuit. This examination must be conducted within the confines of the Texas Family Code. "When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis." *In re H.G.*, 267 S.W.3d 120, 123-24 (Tex. App.—San Antonio 2008, pet. denied) (quoting *Everett v. TK–Taito, L.L.C.*, 178 S.W.3d 844, 851 (Tex. App.—Fort Worth 2005, no pet.)). The party seeking relief must allege and establish standing within the parameters of the language used in the statute. *Everett*, 178 S.W.3d at 851 (citing *Scott v. Bd. of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966)). The Texas Legislature has provided a comprehensive statutory

---

[3] The eighth edition of Black's Law Dictionary does not include a definition for the term "male," but defines "man" as "an adult male" or "a human being." BLACK'S LAW DICTIONARY 979 (8th ed.) (2004).

framework for standing in the context of suits involving the parent-child relationship. *See* TEX. FAM. CODE ANN. §§ 102.003-.006 (West Supp. 2014).

Again, standing must exist at the time a plaintiff files suit. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9; *Bell v. Moores*, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.] 1992, writ denied). If the plaintiff lacks standing at the time suit is filed, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9. Here, at the time Villarreal filed suit on December 9, 2013, he was legally a female. The "Order Granting Change of Identity" [4] was not signed until January 3, 2014, after Villarreal filed suit. Accordingly, Villarreal does not have standing to bring a suit to adjudicate parentage under section 160.602(a)(3), and the trial court did not err in granting the plea to the jurisdiction on this basis. TEX. FAM. CODE ANN. § 160.602(a)(3). Villarreal's first issue is therefore overruled.

## SAPCR

Villarreal next argues that he has standing pursuant to sections 102.003(a)(8) and (9) of the Family Code. *See* TEX. FAM. CODE ANN. § 102.003(a)(8)-(9) (West 2014). An original suit affecting parent-child relationship may be filed at any time by:

> (8) a man alleging himself to be the father of a child filing in accordance with Chapter 160 . . .; [or]
>
> (9) a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition[.]

*Id.*

---

[4] Because it is not necessary to the disposition of this appeal, we do not comment on the effect, if any, of such an order.

Sandoval contends that there is no pleading on file requesting relief under section 102.003, and thus Villarreal did not actually file a SAPCR giving him the right to argue standing under section 102.003. Pleadings are petitions and answers. TEX. R. CIV. P. 45; *Rupert v. McCurdy*, 141 S.W.3d 334, 339 (Tex. App.—Dallas 2004, no pet.). Villarreal first invoked section 102.003 when he filed a "Memorandum of Law in Support of Original Petition to Adjudicate Parentage and, In the Alternative, Standing to Seek Custody and Possession and Access" on January 6, 2014. This memorandum arguably fails to meet the requirements of section 102.008, which specifies the contents of a petition and all other documents in a SAPCR. *See* TEX. FAM. CODE ANN. § 102.008 (West 2014); *Rupert*, 141 S.W.3d at 340. However, because the trial court made findings in its order regarding section 102.003, we will assume that the trial court construed Villarreal's Memorandum of Law as an amended pleading seeking relief under section 102.003. *See Miranda*, 133 S.W.3d at 226-27 ("If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend."); *see also In re Pringle*, 862 S.W.2d 722, 724 (Tex. App.—Tyler 1993, no writ) (holding court of appeals must liberally construe pleadings in SAPCRs and will not be bound by pleading technicalities).

Even though the trial court apparently construed Villarreal's Memorandum of Law as an amended pleading, Villarreal was still required to have standing at the time suit was originally filed on December 9, 2013. Standing and subject matter jurisdiction are determined at the time suit is filed, and amendment of the original petition cannot confer standing on the same basis asserted in the original petition when it has been determined that that basis for standing does not exist. *See In re C.M.J.*, No. 02-12-00036-CV, 2012 WL 6632748, at *2 (Tex. App.—Fort Worth Dec. 21, 2012, no pet.) (mem. op.) (citing *Kilpatrick v. Kilpatrick*, 205 S.W.3d 690, 703 (Tex.

App.—Fort Worth 2006, pet. denied) (holding that grandparents who did not have actual possession of grandchild for six months at time lawsuit was filed could not later acquire standing by amending pleading once six-month requirement was satisfied).

In order to have standing under subsection 102.003(a)(8), Villarreal was required to be a man at the time he brought suit. As previously discussed, there is no evidence in the record before us that Villarreal was legally recognized as a man on December 9, 2013. To the contrary, the fact that Villarreal sought a court order changing his identity from female to male on January 3, 2014 demonstrates to us that he was legally a female on December 9, 2013. Thus, Villarreal does not have standing to bring suit under subsection 102.003(a)(8). TEX. FAM. CODE ANN. § 102.003(a)(8).

Villarreal also argues that he has standing under subsection 102.003(a)(9) of the Family Code. *See* TEX. FAM. CODE ANN. § 102.003(a)(9). The purpose of section 102.003(a)(9) is to create standing for those who have developed and maintained a relationship with a child over time. *In re A.C.F.H.*, 373 S.W.3d 148, 153 (Tex. App.—San Antonio 2012, no pet.); *T.W.E. v. K.M.E.*, 828 S.W.2d 806, 808 (Tex. App.—San Antonio 1992, no writ) (examining former Family Code section 11.03(a)(8)). In computing the time necessary for standing under subsection (a)(9), "the court may not require that the time be continuous and uninterrupted but *shall consider the child's principal residence* during the relevant time preceding the date of commencement of the suit." TEX. FAM. CODE ANN. § 102.003(b) (West 2014) (emphasis added); *In re Y.B.*, 300 S.W.3d 1, 4 (Tex. App.—San Antonio 2009, pet. denied). A determination of standing under this subsection is necessarily fact specific and resolved on an *ad hoc* basis. *In re M.P.B.*, 257 S.W.3d 804, 809 (Tex. App.—Dallas 2008, no pet.).

Generally, courts have found "actual care, control, and possession" when the person asserting standing (1) lived in a home where the child consistently and frequently stayed overnight;

(2) financially supported the child; (3) participated in the child's education; and (4) fed, clothed, and provided health care to the child. *Jasek v. Tex. Dep't of Fam. & Protect. Servs.*, 348 S.W.3d 523, 534 (Tex. App.—Austin 2011, no pet.) (citing *Smith v. Hawkins*, No. 01–09–00060–CV, 2010 WL 3718546, at *3 (Tex. App.—Houston [1st Dist.] Sept. 23, 2010, pet. denied) (mem. op.)); *In re B.A.G.*, 11-11-00354-CV, 2013 WL 364240, at *10 (Tex. App.—Eastland Jan. 31, 2013, no pet.) (mem. op.). The statute does not require that the care, control, and possession be exclusive. *In re A.C.F.H.*, 373 S.W.3d at 153; *Jasek*, 348 S.W.3d at 534; *M.P.B.*, 257 S.W.3d at 809.

At the hearing on the plea to the jurisdiction, evidence was presented showing that Villarreal acted as a committed father, even quitting his job to care for the children after school. The children's speech therapist testified that Villarreal was present for most of the children's therapy sessions and that he is a great father who was an integral part of the progress the children have made. It is undisputed that Villarreal moved out of the family home in January 2011, almost three years prior to filing suit and that the children continued to principally reside with Sandoval.

While we do not take lightly the evidence of Villarreal's significant involvement in the children's lives, we are once again constrained by the Family Code and must look at the evidence relating to care, control, **and** possession during the relevant time period. *See* TEX. FAM. CODE ANN. § 102.003(a)(9). Even though Villarreal cared for the children after school and on many weekends, the record does not reflect that he also had actual control of the children during the relevant time period. Control denotes a caregiver's power or authority to guide or manage the child, including the authority to make decisions of legal significance for the child. *See Jasek*, 348 S.W.3d at 537; *In re K.K.C.*, 292 S.W.3d 788, 792-93 (Tex. App.—Beaumont 2009, orig. proceeding). Villarreal testified that he took the children to the pediatrician when Sandoval could not leave work and even stayed overnight at the hospital when one of the children underwent heart surgery. Sandoval, however, testified that after the couple's separation in 2011, Villarreal only

attended one or two medical appointments, and that she was with him. Villarreal did not present any evidence that he alone authorized medical treatment or made educational decisions. Sandoval was at all times in control of decisions regarding the children's welfare, including their health care and education. Accordingly, based on this record, we cannot conclude that Villarreal has demonstrated that he has standing to file a SAPCR pursuant to subsection 102.003(a)(9). The trial court, therefore, did not err in granting the plea to the jurisdiction on this basis.

### *Common Law Theories of Standing*

In his fourth, fifth, and sixth issues, Villarreal alternatively argues that he has standing to file suit seeking conservatorship, possession, and access to the children pursuant to the common law. Initially, we address his concern regarding the trial court's failure to make findings on the common law doctrines of *in loco parentis*, unconscionability, and estoppel, as well as the concept of a psychological parent. Villarreal asserts that he was harmed by the trial court's failure to file findings of fact and conclusions of law on these common law theories after timely request because he is required to guess at the reasons the trial court denied the requested relief.

When a party makes a proper and timely request for findings of fact and conclusions of law under Rule 296 and the trial court fails to comply, harm is presumed unless the record affirmatively shows that the requesting party was not harmed by their absence. TEX. R. CIV. P. 296; *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam); *Haut v. Green Café Mgmt., Inc.*, 376 S.W.3d 171, 182 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The error is harmful if it prevents an appellant from properly presenting a case to the appellate court. *Tenery*, 932 S.W.2d at 30 (court's failure to comply with Family Code provision requiring specific findings if the court deviates from the child support guidelines was harmful because it prevented appellant from effectively contesting the child support order). However, the court's failure to make findings is not harmful error if the record before the appellate court affirmatively shows that the

complaining party suffered no injury. *Id.* (appellant was not harmed by trial court's failure to make requested findings and conclusions where there was ample evidence in the record to support the division of the marital estate); *Estate of Hernandez*, 04-14-00046-CV, 2014 WL 7439713, at *4 (Tex. App.—San Antonio Dec. 31, 2014, no. pet. h.) (mem. op.).

Here, the record affirmatively shows that Villarreal was not harmed by the absence of findings on the common law doctrines of *in loco parentis*, unconscionability and estoppel, as well as the concept of a psychological parent. Villarreal cannot credibly assert that he was forced to speculate or guess at the reasons the trial court granted Sandoval's plea to the jurisdiction. In the order granting the plea to the jurisdiction, the trial court clearly made the following findings:

> that Villarreal does not have standing to bring a Suit to Adjudicate Parentage pursuant to section 160.602(3) because Villarreal is not a man whose paternity of the child is to be adjudicated;
>
> that Villarreal does not have standing to seek conservatorship and possession and access under section 102.003(a)(8), (9) because Villarreal is not a man alleging himself to be the father of a child, and because Villarreal is not a person who has had actual care, control and possession of the child for at least 6 months ending not more than 90 days preceding the date of the filing of the petition.

The key issues at the hearing on the plea to the jurisdiction were (1) Villarreal's gender and (2) actual care, control, and possession of the children by Villarreal. The trial court made findings related to those two issues. Thus, the lack of findings related to the common law theories of standing did not prevent Villarreal from presenting his case on appeal.

In any event, it is not possible that the trial court could have denied the plea to the jurisdiction based on Villarreal's alternative assertions of standing under the common law. The phrase *in loco parentis* means "in the place of a parent" and "refers to a relationship a person assumes toward a child not his or her own." *Coons-Andersen v. Andersen*, 104 S.W.3d 630, 634-35 (Tex. App.—Dallas 2003, no pet.); *Cunningham v. Ansorena-Cunningham*, 03-08-00493-CV, 2009 WL 2902718, at *2 (Tex. App.—Austin Aug. 26, 2009, no pet.) (mem. op.). Under common

law, a person *in loco parentis* to a child had the same rights, duties, and liabilities as the child's parents. *See McDonald v. Tex. Employers' Ins. Ass'n*, 267 S.W. 1074, 1076 (Tex. Civ. App.—Dallas 1924, writ ref'd). These rights may include, in appropriate circumstances, having standing as a party in a lawsuit involving custody of the child. *Trotter v. Pollan*, 311 S.W.2d 723, 729 (Tex. Civ. App.—Dallas 1958, writ ref'd n.r.e.) (op. on reh'g) (persons *in loco parentis* have "existing justiciable interest" in controversy involving custody of child). As noted by the court in *Coons-Andersen*, however, "Texas courts have never applied the common law doctrine of *in loco parentis* to grant custodial or visitation rights to a non-parent, against the parent's wishes, when the parent maintains actual custody of the child." 104 S.W.3d at 635. "The defining characteristic of the relationship is actual care and control of a child by a non-parent who assumes parental duties." *Id.* The relationship generally occurs only when a parent is unwilling or unable to care for the child. *Id.*

Here, Sandoval was at all times willing and able to care for her children and she, in fact, did, and continues to do so. Villarreal does not, therefore, have standing under the doctrine of *in loco parentis*.

We also disagree that Villarreal has standing pursuant to the common law doctrines of unconscionability and estoppel. He cites no legal authority for this proposition. In any event, unconscionability and estoppel are not independent grounds for standing. As discussed earlier, we are confined to examining standing within the statutory framework of the Family Code. *See In re H.G.*, 267 S.W.3d at 123-24. Accordingly, Villarreal cannot pursue a SAPCR under the common law doctrines of unconscionability and estoppel.

Finally, we disagree that Villarreal has standing under the concept of a psychological parent. The psychological parent doctrine is not discussed in Texas case law. Villarreal contends that a 1995 Wisconsin case set forth a four-element test that is now a common definition of the

psychological parent doctrine. *See In re Custody of H.S.H.-K.*, 533 N.W.2d 419 (Wisc. 1995). However, we need not discuss the elements of the psychological parent doctrine because we are confined to examining standing within the statutory framework of the Family Code. *See In re H.G.*, 267 S.W.3d at 123-24. Absent statutory standing, Villarreal cannot file suit seeking conservatorship, possession, and access to the children under the psychological parent doctrine.

## CONCLUSION

Based on the foregoing, we overrule Villarreal's issues on appeal and affirm the judgment of the trial court granting Sandoval's plea to the jurisdiction.

Rebeca C. Martinez, Justice