**AFFIRMED; and Opinion Filed August 22, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00950-CV

## IN THE INTEREST OF D.S.B. AND K.A.B., CHILDREN

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 13-11214**

## MEMORANDUM OPINION

Before Justices Lang, Evans, and Whitehill
Opinion by Justice Lang

Sidney Bigham (Father), appearing pro se, appeals from the trial court's judgment granting him a divorce from Alicia Bigham (Mother).[1] In relevant part, that judgment also appointed Father's sister and appellee, Sharon Bigham ("Aunt"), sole managing conservator of his two children, denied Father possessory conservatorship, and ordered he complete certain services by a date certain before he could have supervised visitation with the children. Finally, the judgment enjoined him from "coming within 500 feet" of Aunt's house and from posting comments about the children or Aunt on Facebook.

Father lists nine issues in his brief. The first seven assert the trial judge violated certain canons of the Code of Judicial Conduct. Specifically, Father asserts:

•the trial judge "act[ed] as her own attorney," in violation of Canon 4G;

---

[1] Mother did not participate at trial and did not appeal the judgment.

•the trial judge was biased and prejudiced, in violation of Canon 3B(5), (6) and (8);

•the trial judge's rulings are not supported by the evidence, in violation of Canon 3B(7) and (8);

•the trial judge's order that he complete certain services before supervised visitation can begin are unreasonable and oppressive, in violation of Canon 3B (5), (6), and (8);

•the trial judge disregarded a natural parent's "superior rights," in violation of Canon 3B(5), (6), and (8);

•the trial judge's order enjoining him from "coming within 500 feet" of Aunt's house when Aunt lives next door to Father's mother is unreasonable, in violation of Canon 3B (5), (6), and (8); and,

•the trial judge's order enjoining him from posting Facebook comments concerning his children denies him his right to free speech, in violation of Canon 3B(5), (6), and (8).

Father's last two issues assert Aunt is in contempt of court by changing her telephone number and the children are living in "unsafe, dangerous conditions."

Based on argument in Father's brief, we construe him to raise two broad issues. First, he challenges the sufficiency of the evidence to support the rulings respecting conservatorship, the requirement he complete a batterer's intervention program, and the injunction prohibiting him from "coming within 500 feet" of Aunt's house. We construe that issue to encompass his contention concerning the children's living conditions. Second, we construe him to complain of the trial judge's conduct.[2] For the reasons that follow, we decide those issues against Father and affirm the trial court's judgment.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Father and Mother are the parents of D.S.B., born in August 2006, and K.A.B., born in November 2007. While Mother was pregnant with K.A.B., Children's Protective Services

---

[2] We observe Father's issue respecting Aunt being in contempt of court is not properly before us because, as Aunt responds in her brief, Father did not present this argument to the trial court and obtain a ruling. *See* TEX. R. APP. P. 33.1(a)(1).

–2–

("CPS") became involved with the family over concerns that Father was abusive of Mother and Mother could not protect D.S.B. Mother and D.S.B. moved out of the home, and Father was allowed only supervised visitation with D.S.B. At the end of November 2007, after K.A.B. was born, CPS offered Father and Mother counseling and other services with the hope of reunifying the family. Six months later, the counselor determined sufficient progress had been made, and CPS closed the case.

CPS became involved again in September 2009 after Father was imprisoned for assaulting Mother and Mother abandoned the children. Aunt, who had three children of her own and four other children CPS had placed with her, volunteered to take the children until Father was released from prison. However, in May 2013, one month before Father's release, she filed suit seeking to be appointed sole managing conservator of the children.[3]

While Father was still in prison, the trial court signed temporary orders appointing Aunt sole managing conservator of the children. The trial court found credible evidence had been presented of a history or pattern of child neglect by Father and ordered Father have only supervised visitation "on the days and times prescribed" by Aunt. Nine months later, Father moved to modify the temporary orders, asserting he was not allowed to visit or speak to the children. Following a court-ordered interview of the children by "Family Court Services" staff and a hearing in May 2014, the trial court ordered Father to participate in parenting classes, a batterer's intervention and prevention program, and counseling. Father was also enjoined from "coming within 500 feet" of Aunt's house and was denied any possession or access to the children.

The record of that hearing is not a part of the appellate record, but two exhibits admitted at that hearing, the CPS records and postings from Father's Facebook page, were also admitted at

---

[3] Father subsequently filed for divorce, and the two suits were consolidated.

trial the following month. The CPS records reflected Father's abuse of Mother and revealed Father had a criminal record dating back to 1993 for offenses ranging from aggravated robbery to assault of an elderly person. The Facebook postings, as recent as three months before trial, showed Father's disdain for women and antagonism toward Aunt. Testimony from Aunt also showed Father spoke inappropriately to the children on the telephone and had women, known to be prostitutes or drug users, "in and out" of his home.

Father did not deny his criminal record, but testified he was now "stable." Also, he testified he had enrolled in counseling, parenting classes, and the batterer's program, as ordered, and had not missed any sessions. Further, he advised the trial court he was self-employed, working "8:00 to 3:00," and had lived in the same two-bedroom apartment for over a year. The apartment was in a "family-friendly neighborhood" with a nearby school and a "Boys and Girls Club." He testified he was providing financial support for the children, and had provided them financial support while in prison from commissions earned prior to his incarceration.

Father testified the children should know their natural parents "for the[ir] proper mental, psychological, and spiritual development." In his opinion, it would be in the children's best interest to live with him, or, at a minimum, visit him weekly. He knew "CPR" and the "Heimlich" and had been honest with the children about being in prison and "coming to get them" to take them home. He knew Aunt loved the children, but felt she had a "selfish agenda" and had "exploited" them for "financial gain." He believed she was "very negative towards the kids, telling them he had abandoned them, and had over-heard her "verbally abuse them." Further, she had denied him any access to the children and changed her telephone number so he could no longer call the children.

Mother's paternal grandmother testified she had seen the children in Aunt's care and thought Aunt did "an excellent job of managing [them.]" She described Aunt as "calm, cool,

–4–

[and] collected," and testified the children respected her and seemed happy. The children were excelling in school, and D.S.B. had earned several citizenship awards.

## II. SUFFICIENCY OF EVIDENCE

Father's sufficiency issues challenge the trial court's rulings concerning conservatorship,[4] the requirement he complete a batterer's program, and the injunction prohibiting him from "coming within 500 feet" of Aunt's house.[5] He asserts no evidence supports the imposition of the injunction, and the evidence supporting the requirement he complete the batterer's program is too remote because he last assaulted Mother in 2009. As to the conservatorship determinations, he asserts that, as a parent, he has a superior right over Aunt to custody of the children, and Aunt failed to show his appointment as sole managing conservator was not in the children's best interest. Although he assaulted Mother, has other criminal convictions, and has a history of CPS involvement, Father argues no risk exists of violence against Mother since they are divorced, he "paid his time" in prison, and he met CPS's requirements to be reunified with his family. Moreover, he argues his testimony demonstrated he is financially able to care for the children and has always supported them; he has adequate housing for the children; he is fit, with no evidence presented he uses drugs or has committed crimes against children; and, he is able to provide undivided attention to the children because he lives alone. By contrast, he asserts, Aunt is dependent on welfare; she lives in a small house with nine children; she cannot provide quality time to the children because she has so many; she associates with drug users, including Aunt and

---

[4] The trial court also denied Mother possessory conservatorship. Father appears to argue this ruling is not supported by the evidence either. Although Father may represent himself, he may not represent Mother. *See Paselk v. Rabun*, 293 S.W.3d 600, 606 (Tex. App.—Texarkana 2009, pet. denied).

[5] In arguing these issues, Father relies on unsigned findings of fact and conclusions of law that are not part of the clerk's record filed with this Court. The record reflects that, following trial, Father filed his notice of appeal and timely requested findings and conclusions. The record also reflects he filed a motion to recuse the trial judge. The trial judge referred the recusal motion to the presiding administrative judge who observed an appeal had been filed, determined the case was "closed" and "stayed," and directed the trial judge "take no actions regarding this matter." Although a trial court has a mandatory duty to file findings and conclusions when a request is timely made, the failure to do so is harmful only when the appellant has to guess at the reason the trial court ruled against him or is unable to present issues on appeal. *See Guillory v. Boykins*, 442 S.W.3d 682, 694 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Larry F. Smith, Inc. v. The Weber Co., Inc.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied). Although the trial court here did not file findings and conclusions, the lack of findings have not kept Father from presenting his issues. We do not rely on the unsigned findings in addressing his arguments.

Father's own mother, and a known sex offender; she is dishonest with the children, lying to them that Father and Mother abandoned them; and, she has exposed the children to dangerous conditions by having them live with a victim of sexual abuse, who could abuse them, and keeping stray, unvaccinated dogs. Father asserts the overwhelming weight of the evidence supports his appointment as sole managing conservator of the children and no visitation or access to Aunt.

### A. *Applicable Law*

A strong presumption exists that the best interest of a child is served by keeping the child with the natural parent, and, if managing conservatorship cannot be awarded to the parent, the parent should be appointed possessory conservator. *See* TEX. FAM. CODE ANN. § 153.131 (West 2014); TEX. FAM. CODE ANN. § 153.191; *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). To rebut the presumption that a child should remain with a parent, a nonparent seeking managing conservatorship of a child must prove by a preponderance of the evidence that awarding custody to the parent would significantly impair the child's physical or emotional development. TEX. FAM. CODE ANN. § 153.131 (West 2014); *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990) (construing section 153.131's predecessor). The nonparent must also show the appointment of the parent as managing conservator would not be in the child's best interest. *See* TEX. FAM. CODE ANN. § 153.002. The nonparent may satisfy his burden by showing a history or pattern of abuse by the parent against the other parent. TEX. FAM. CODE ANN. § 153.004(b).

To rebut the presumption that a parent not appointed managing conservator of his child should be appointed possessory conservator, the party opposing possessory conservatorship must show the appointment is not in the child's best interest and parental possession and access would endanger the child's physical or emotional welfare. TEX. FAM. CODE ANN. § 153.191. The

family code does not define "best interest," but Texas courts have uniformly recognized the parties' parental abilities and the stability of their homes as factors to be considered in determining best interest. *See In re C.Q.T.M.*, 25 S.W.3d 730, 734 (Tex. App.—Waco 2000, pet. denied). Other factors include (1) the child's desires; (2) the child's current and future emotional and physical needs; (3) any current and future emotional and physical danger; (4) the programs available to assist the parties to promote the child's best interest; (5) the parties' plans for the child; (6) the parties' acts or omissions which may indicate the existing parent-child relationship is not a proper one; and (7) any excuse for the parties' acts or omissions. *See In re M.P.B.*, 257 S.W.3d 804, 813 (Tex. App.—Dallas 2008, no pet.).

### B. Standard of Review

A trial court is given wide latitude in determining the best interest of a child, and orders respecting what serves the child's best interest are reviewed for a clear abuse of discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Peck v. Peck*, 172 S.W.3d 26, 33 (Tex. App.—Dallas 2005, pet. denied). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). No abuse of discretion occurs when some evidence of a substantive probative character exists to support the trial court's decision. *See M.P.B.*, 257 S.W.3d at 811-12.

Complaints about the legal and factual sufficiency of the evidence are not independent grounds for asserting error in conservatorship cases, but are relevant factors in deciding whether an abuse of discretion occurred. *In re J.G.L.*, 295 S.W.3d 424, 427 (Tex. App.—Dallas 2009, no pet.). Whether an abuse of discretion occurred depends on whether (1) the trial court had sufficient information upon which to exercise its discretion and (2) the trial court erred in the application of its discretion. *In re M.A.M.*, 346 S.W.3d 10, 14 (Tex. App.—Dallas 2011, pet.

denied). Legal and factual sufficiency are relevant to the first factor. In determining whether the trial court had sufficient information upon which to exercise its discretion, the reviewing court examines the legal and factual sufficiency of the evidence to support the trial court's decision. *See M.A.M.*, 346 S.W.3d at 14. The reviewing court will conclude the evidence is legally insufficient if the record, viewed in the light most favorable to the judgment, discloses (1) a complete absence of evidence of a vital fact; (2) the only evidence offered to prove a vital fact cannot be considered because of rules of law or evidence; (3) the evidence offered to prove a vital fact is no more than a mere scintilla, that is, it is "so weak as to do no more than create a mere surmise or suspicion;" or (4) the opposite of the vital fact is conclusively established. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Flores v. Flores*, 847 S.W.2d 648, 651 (Tex. App.—Waco 1993, writ denied). The reviewing court will conclude the evidence is factually insufficient if, considering and weighing all the evidence presented, the decision is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam).

## C. Application of Law to Facts

The record reflects the children, almost seven and eight years old at the time of trial, had been in a stable home with Aunt since they were two and three years old. Father asserts in his brief before this Court that Aunt exposed the children to dangerous conditions, lied to them, was financially motivated, and did not spend quality time with the children because she cared for seven other children. According to the record, no such testimony was presented at trial. In the trial court, Father did testify Aunt was "very negative towards the kids" and "verbally abused them," but paternal grandmother testified Aunt did "an excellent job of managing" the children. Further, the record reflects the children were happy, respected Aunt, and were excelling in school. By contrast, the record reflects when the children were with Father and Mother as

toddlers, they were exposed to violence and, as a result, instability. Although Father contends his life has been stable since his release from prison, credible evidence was presented of a history of physical violence against Mother, and recent Facebook postings showed his disdain for women and antagonism toward Aunt. Additionally, Aunt testified he spoke inappropriately to the children and had known prostitutes and drug users "in and out" of his home.

On this record, the trial court could properly find the appointment of Father as sole managing conservator would significantly impair the children's physical and emotional development and not be in their best interest. *See Danet v. Bhan*, 436 S.W.3d 793, 797 (Tex. 2014) (per curiam) (affirming award of sole managing conservatorship to nonparents, who had cared for child "most of his life," based on evidence of child's bonding with them; mother's past drug use, criminal record, instability, and abandonment; and mother's recent failures to visit, inconsistent communication, and misconduct, including "sneaking" into museum rather than paying admission). The trial court could also properly find the appointment of Father as possessory conservator was not in the children's best interest and awarding him access without completion of a batterer's intervention program and without enjoining him from "coming within 500 feet" of Aunt's house would endanger their welfare. *See* TEX. FAM. CODE ANN. § 153.004(e) (rebuttable presumption exists that it is not in child's best interest parent to have unsupervised visitation if credible evidence is presented of a history or pattern or past or present physical abuse by that parent directed against the other parent); *M.P.B.*, 257 S.W.3d at 813 (party's acts or omissions which may indicate existing parent-child relationship is not proper relevant factor in determining child's best interest). Viewing the evidence under the appropriate standard, we conclude the trial court's rulings were not an abuse of discretion. We decide Father's sufficiency issues against him.

### III. TRIAL JUDGE'S CONDUCT

Father contends the trial judge violated Canon 3 and Canon 4 of the Code of Judicial Conduct. However, as Canon 8 of the Code provides, the Code is not designed or intended as a basis for civil liability or to provide a party a "tactical advantage in a proceeding." TEX. CODE JUD. Conduct, Canon 8(A), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B (West 2013); *see also Merritt v. Davis*, 331 S.W.3d 857, 863 (Tex. App.—Dallas 2011, pet. denied) (finding no authority to support proposition that violation of Code "automatically" amounts to reversible error"). Rather, it is designed to provide guidance to judges and "a structure for regulating conduct through the State Commission on Judicial Conduct." *See* TEX. CODE JUD. Conduct, Canon 8(A), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B. Moreover, under our constitution, the State Commission on Judicial Conduct is tasked with enforcement of the Code. *Joachim v. Chambers*, 815 S.W.2d 234, 243 (Tex. 1991) (citing TEX. CONST. art. V, § 1-a(6)). We decide these issues against Father.

## IV. CONCLUSION

Having decided Father's issues against him, we affirm the trial court's judgment.

/Douglas S. Lang/

DOUGLAS S. LANG

140950F.P05                             JUSTICE

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF D.S.B. AND
K.A.B., CHILDREN

No. 05-14-00950-CV     V.

On Appeal from the 301st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 13-11214.
Opinion delivered by Justice Lang. Justices
Evans and Whitehill participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's judgment.

We **ORDER** appellee Sharon Bigham recover her costs of this appeal from appellant Sidney Bigham.

Judgment entered this 22nd  day of August, 2016.