In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00014-CV


____________________



IN THE INTEREST OF K.E.L.






On Appeal from the 317th District Court


Jefferson County, Texas


Trial Cause No. F-190,182






 MEMORANDUM OPINION


 This is an appeal from a modification order that granted the child's mother the right
to designate the child's primary residence. We affirm. 

Procedural Background


 J.L., (1) the child's father, brings this appeal. H.M., the child's mother, and J.L. are the
parents of K.E.L., who was born in February 2004. Shortly after the child's birth, H.M.'s 
mother filed an original petition affecting the parent-child relationship in which she requested
that the court name her and H.M. joint managing conservators and designate H.M.'s mother
as the person with the exclusive right to designate the child's primary residence. J.L. filed
a counter-petition asking that he be named as the child's sole managing conservator and be
given the exclusive right to establish the child's primary residence. At the conclusion of a
trial in July 2005, the trial court orally pronounced its decision to make the parents joint
managing conservators and named J.L. as the parent with the right to select the child's
residence. The trial court later signed a written order consistent with its oral pronouncement
of its intent to give J.L. the right to designate the child's primary residence. Instead of the
terms contained in a standard possession order, however, the order further provided that
K.E.L.'s parents were to alternate possession of her on a weekly basis. See Tex. Fam. Code
Ann. § 153.312 (Vernon 2008). (2) 

 In January 2007, H.M. filed a motion to modify the terms of the original possession
order. H.M. requested that the trial court designate her as the person having the exclusive
right to determine the child's primary residence. In November 2007, the trial court
conducted an evidentiary hearing on H.M.'s motion. At the conclusion of the hearing, the
trial judge modified its prior order and gave H.M. the right to designate the child's primary
residence. 

 In a single issue, J.L. contends the trial court abused its discretion in modifying its
prior order because the evidence was legally and factually insufficient to support the
modification.

Standard of Review 


 We review the trial court's modification of an order creating a joint managing
conservatorship under an abuse of discretion standard. See Gillespie v. Gillespie, 644
S.W.2d 449, 451 (Tex. 1982); In re T.D.C., 91 S.W.3d 865, 872 (Tex. App.-Fort Worth
2002, pet. denied). The appellate court gives "wide latitude" to the trial court's modification
decisions and will reverse only if the record as a whole shows the trial court abused its
discretion. In re J.R.D., 169 S.W.3d 740, 743 (Tex. App.-Austin 2005, pet. denied). "A trial
court abuses its discretion if it acts arbitrarily and unreasonably or without reference to
guiding principles." In re T.D.C., 91 S.W.3d at 872 (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)).

 Under an abuse of discretion standard as applied to the modification of a child custody
order, sufficiency issues are considered on appeal as follows:

 [L]egal and factual sufficiency are not independent grounds of error, but are
relevant factors in deciding whether the trial court abused its discretion. In
determining whether there has been an abuse of discretion because the
evidence is legally or factually insufficient to support the trial court's decision,
we engage in a two-pronged inquiry: (1) Did the trial court have sufficient
information upon which to exercise its discretion; and (2) did the trial court err
in its application of discretion? The traditional sufficiency review comes into
play with regard to the first question. We then proceed to determine whether,
based on the elicited evidence, the trial court made a reasonable decision. 

 

Id. (citations omitted). An abuse of discretion, however, does not occur as long as some
evidence of a substantive and probative character exists to support the trial court's decision. 
Holley v. Holley, 864 S.W.2d 703, 706 (Tex. App.-Houston [1st Dist.] 1993, writ denied). 

Testimony at the Modification Hearing


 Three witnesses testified during the November 2007 modification hearing: H.M., J.L.,
and J.L.'s mother. H.M., age 20 at the time of the hearing, testified that she lived with her
parents and attended college. She testified that as of January 2008, she would be a junior. 
H.M. explained that she and J.L. had followed the trial court's possession order and
exchanged possession of the child on a weekly basis since the prior hearing in July 2005. 
According to H.M., however, J.L. had not fully complied with the order because he had not
paid the child support required under the order. At the time of the hearing, J.L. owed H.M.
past child support of approximately $4200.

 H.M. also explained that on several occasions, when J.L. returned K.E.L. to her,
K.E.L. had suffered ant bites on her leg, shoulder, or neck. K.E.L. also appeared on
occasion to have suffered from flea bites. On another occasion, K.E.L. suffered a knee injury
when jumping on a trampoline while in J.L.'s care. When H.M. took K.E.L. to the doctor
on the following day, the injury was diagnosed as a fractured leg.

 H.M. explained that she attended college classes three to four hours daily and was free
to care for K.E.L. when not attending class. During week-ends when she had K.E.L., H.M.
stated that she stayed with the child and did not go out. In contrast, H.M. explained that
when J.L. had the child on week-ends, she had seen him out. H.M. also testified that when
J.L. had K.E.L., she called J.L.'s house every day to check on her, but that more times than
not J.L. was not there when she called. H.M. described difficulty with the child's wanting
to stay up until 11:30 or 12:00 on evenings immediately after J.L. returned K.E.L. to her. 
H.M. also complained of certain language the child used that H.M. attributed to the child's
being around J.L.

 According to H.M., a week-to-week schedule was not in the child's best interest. She
felt that K.E.L. needed more stability and would benefit from being in one place all the time. 
According to H.M., she had matured since graduating from high school and had plans to get
a good job upon graduation to support her daughter. H.M. also testified that she did not think
K.E.L. was safe when she was with J.L. At the time of the hearing, H.M. testified that she
was not employed or married, and she explained that she depended upon her parents for her
support.

 J.L. also testified at the hearing. At the time of the hearing, J.L. stated that he lived
with his parents and worked for a corporation as a field service technician performing waste
water analysis. He also testified about his rate of pay, work-schedule, and job duties with his
current employer, as well as with two prior employers for positions that he had held during
2005 and 2006. J.L. explained that his mother cared for K.E.L. during the workday.

 J.L.'s testimony included information about his social life and his limited contact with
H.M. after the court gave him the right to designate the child's primary residence. The trial
court admitted a copy of J.L.'s "MySpace" (3)
 page that contained sexually-oriented statements
that he agreed he had made on the page. According to J.L., there was nothing on the page
that would indicate he was a bad parent. J.L. also admitted that he had a message on his
answering machine that stated "[i]f you don't want to leave a message, stick it up your b***." 
J.L. contradicted H.M.'s testimony that implied he was usually not home when H.M. called
to check on K.E.L., and J.L. also stated that he never allowed K.E.L. to stay up past 9:30
p.m. Regarding K.E.L.'s importance to him, J.L. testified that K.E.L. is "the only thing right
now that I believe fully matters to me. My job, that's one thing; but my daughter is my life. 
She's all I care about." J.L. denied that he had used bad language in front of K.E.L. With
respect to the child's safety, J.L. testified that when H.M. returned K.E.L. to him, there were
occasions when K.E.L. had a black eye or bumps on her head, but he attributed this to usual
childhood experiences and did not take pictures. J.L. also addressed whether he had
complied with the prior court orders. He admitted that he had never paid child support, and
asserted that he had never seen a copy of the court's order requiring the payment. J.L.'s mother also testified at the hearing. According to her, J.L. was seventeen when
K.E.L. was born, but since that time "has grown up so much. He went from a kid that didn't
know anything about kids to being a dad, and he takes responsibility for her. He bathes her. 
He feeds her. He - you know, he is just there for her." J.L.'s mother also testified that she
loves K.E.L., and that if she did not believe that J.L. was a good father she would say so. 

 At the conclusion of the hearing, the trial court advised the parties of its decision to
make the parents joint managing conservators and to alter the times of the parent's
possession to conform them generally to the standard possession order. The court further
gave H.M. the exclusive right to designate the child's residence. The court informed the
parties that it had decided to give H.M. this right and take it from J.L. based on "material and
substantial change [in the] child's behavior, sleeping, the child's language, father's language,
the child's attitude, [and] the child's injuries." The trial judge further stated that "I would
never have done a week to week on a 2 year old. . . . And I think that is injurious to the child. 
So, those are some of the reasons [for the modifications]."

Analysis


 A trial court may modify an order appointing a conservator of a child if the
modification is in the child's best interest, and, among other grounds, the circumstances of
the child or a conservator have materially and substantially changed since rendition of the
earlier order. See Tex. Fam. Code Ann. § 156.101(1) (Vernon 2008). In determining issues
of conservatorship and possession, the legislature has provided that "[t]he best interest of the
child shall always be the primary consideration . . . ." Tex. Fam. Code Ann. § 153.002
(Vernon 2008). When, as here, no findings of fact or conclusions of law are requested or
filed, an appellate court implies all necessary findings in support of the trial court's
judgment. See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); In re M.P.B., 257
S.W.3d 804, 809 (Tex. App.-Dallas 2008, no pet.) (applying the implied finding rule to an
appeal of a child custody modification proceeding). 

 J.L. challenges whether sufficient evidence established a material and substantial
change in circumstances to justify the trial court's decision to modify the original
conservatorship order, contends the trial court abused its discretion in modifying the terms
of the original order, and asserts the evidence does not show that the modification is in the
child's best interest. See Tex. Fam. Code Ann. § 156.101 (Vernon 2008). The record of the
hearing on H.M.'s request to modify the prior order contains testimony tending to show
changes in the child's behavior, sleeping patterns, the child's language, the father's language,
and in the child's attitude, all following the date of the trial court's original decision to grant
J.L. the right to designate the child's primary residence. After the date of the prior order,
there was also evidence that K.E.L.'s leg had been fractured while she was in J.L.'s care,
testimony about the ant bites she suffered while in his care, and evidence concerning sexually
suggestive content on his "MySpace" page. There is no testimony that when the trial court
decided to enter the prior order that it had considered similar instances of injury, similar
evidence tending to reveal J.L.'s personality, or similar evidence regarding the development
of K.E.L.'s personality. 

 While trial courts conducting conservatorship hearings may face conflicting testimony
about each of the parent's abilities that must be weighed in reaching a decision about what
is in the child's best interest, the trial court is in the better position to evaluate the evidence
"since it faced the parties and their witnesses, observed their demeanor, and had the
opportunity to evaluate the claims made by each parent." In re J.R.D., 169 S.W.3d at 743. 
"In a nonjury trial 'every reasonable inference and intendment supported by the record will
be drawn in favor of the trial court's judgment.'" Burns v. Burns, 116 S.W.3d 916, 920 (Tex.
App.-Dallas 2003, no pet.) (quoting Black v. Dallas County Child Welfare Unit, 835 S.W.2d
626, 630 (Tex. 1992)). 

 Here, the trial court's modification of its prior order was not limited to changing the
parent with the right to designate the child's primary residence. The trial court's concern that
the prior court's possession schedule was interfering with K.E.L.' s development of a sense
of a "home base" led it to alter the prior terms of the possession order, making them more
like those in a standard possession order, with the apparent goal of reducing further problems
beginning to develop in K.E.L.'s personality. Given the decision to alter the prior schedule,
and the current schedules of the parents, the trial court may have concluded that H.M.'s
schedule would best meet the child's needs. Finally, the evidence concerning the content
contained on J.L.'s "MySpace" page may have led the trial court to believe that H.M. would
be more responsible in serving as the person with the right to designate the child's primary
residence. 

 Based on the testimony before it, we cannot say the trial court abused its discretion
in finding the changes sufficiently substantial to justify its decision to change the prior order
by granting H.M. the right to designate the child's primary residence. We further find that
the trial court had sufficient information upon which to exercise its discretion, and the
evidence does not demonstrate that the trial court abused its discretion. Finally, we conclude
that the record contains sufficient evidence to show the trial court's decision to modify its
prior order was reasonable and in the child's best interest. 

 We overrule J.L.'s sole issue and affirm the trial court's order of December 10, 2007. 
 AFFIRMED.


 ___________________________

 HOLLIS HORTON

 Justice 

Submitted on December 11, 2008

Opinion Delivered February 26, 2009

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. To protect the privacy of the parties involved in this appeal, we identify the parents
and child by their respective initials. See Tex. Fam. Code Ann. § 109.002(d) (Vernon
2008).
2. Although the Legislature amended certain aspects of the statute that provides the
terms for standard possession orders after the possession order at issue here, the changes are
not pertinent to this appeal. Therefore, we cite the current version. Compare Tex. Fam.
Code Ann. § 153.312 (Vernon 2008) with Act of May 27, 2007, 80th Leg., R.S., ch. 1041,
§ 2, sec. 153.312(a), 2007 Tex. Gen. Laws 3594, 3595 (current version at Tex. Fam. Code
Ann. § 153.312(a) (Vernon 2008)), and Act of May 29, 2005, 79th Leg., R.S., ch. 916, § 12,
sec. 153.312(b), 2005 Tex. Gen. Laws 3148, 3151-52 (current version at Tex. Fam. Code
Ann. § 153.312(b) (Vernon 2008)).
3. "
MySpace is a social networking website with an interactive, user-submitted network
of friends, personal profiles, blogs, groups, photos, music, and videos for teenagers and
adults internationally." Wikipedia, the Free Encyclopedia, MySpace, at http:// en.wikipedia.
org/wiki/MySpace (last visited Feb. 3, 2009).