**AFFIRM; and Opinion Filed July 20, 2017.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-15-01479-CV**

## IN THE INTEREST OF J.R.W., A CHILD

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 469-56410-2010**

# MEMORANDUM OPINION ON REHEARING

Before Justices Bridges, Lang-Miers, and Schenck
Opinion by Justice Schenck

On May 19, 2017, on the Court's own motion, we withdrew the opinion issued on March 21, 2017, and we vacated our judgment of that same date. The following is now the opinion of the Court.

Mother of J.R.W. appeals from a final order appointing herself and J.R.W.'s paternal grandmother ("Grandmother") as joint managing conservators.[1] In her first issue, Mother complains Grandmother lacked standing to intervene to seek access to and conservatorship of J.R.W. In her second issue, Mother argues the trial court erred by appointing Grandmother as a joint managing conservator of J.R.W. In her third and final issue, Mother contends the trial court violated her due-process rights by depriving Mother of opportunities to present arguments and testimony and to examine witnesses. We affirm the trial court's judgment.

---

[1] Father was named possessory conservator, and no one has challenged that part of the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father have one child, J.R.W., born in May 2009. When J.R.W. was only weeks old, Mother and Father separated. In December 2010, Father filed a petition, seeking appointment of himself and Mother as joint managing conservators. Mother responded with a general denial. By January 2011, the trial court signed orders allowing Father visitation to be supervised by Grandmother. On August 22, 2013, Grandmother filed her original petition in intervention. She filed her first amended petition on December 17, 2013, and a supporting affidavit the next day. On January 10, 2014, Mother filed a motion to strike Grandmother's intervention. After a January 16, 2014 hearing on temporary orders, at which Mother and Grandmother both argued Father had committed family violence and suffered from drug addiction and mental illness, the trial court issued temporary orders appointing Mother as sole managing conservator and awarding Grandmother monthly visitation with J.R.W. at a neutral location. On March 26, 2014, Grandmother filed a response to Mother's motion to strike, and on April 14, 2014, Grandmother filed an affidavit in opposition to Mother's motion to strike and in support of her possession of or access to J.R.W. On April 17, 2014, the trial court held a hearing on several motions, including Mother's motion to strike, which the trial court later denied on May 1, 2014.

Mother, Father, and Grandmother proceeded to a bench trial on March 17, 2015, and the trial court signed a final order on September 3, 2015, in which the trial court appointed both Mother and Grandmother as joint managing conservators with Mother having the exclusive right to designate the primary residence of J.R.W. Mother filed a motion for new trial in which she urged, among other things, that the trial court erred in allowing Grandmother's intervention and that the evidence was legally and factually insufficient to support the trial court's judgment.

–2–

After conducting a hearing, the trial court denied Mother's motion, at which point Mother appealed.

## GRANDMOTHER'S STANDING

A grandparent, by statute, may file an original suit requesting managing conservatorship under section 102.004(a), intervene in a pending suit under 102.004(b), or file a suit to seek possession or access under section 153.432.[2]  *See* TEX. FAM. CODE ANN. §§ 102.004, 153.432 (West 2016).  The question of whether any party has standing to seek managing conservatorship is a threshold jurisdictional issue.  *See In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.—Dallas 2008, no pet.).  When, as here, the trial court makes no separate findings of fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial

---

[2] Section 102.004 provides for standing for grandparent or other person as follows.

(a) In addition to the general standing to file suit provided by Section 102.003, a grandparent, or another relative of the child related within the third degree by consanguinity, may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that:

(1) the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; or

(2) both parents, the surviving parent, or the managing conservator or custodian either filed the petition or consented to the suit.

(b) An original suit requesting possessory conservatorship may not be filed by a grandparent or other person. However, the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit filed by a person authorized to do so under this subchapter if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

(c) Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153.

Section 153.432 provides for a grandparent's suit for possession or access as follows.

(a) A biological or adoptive grandparent may request possession of or access to a grandchild by filing:

(1) an original suit; or

(2) a suit for modification as provided by Chapter 156.

(b) A grandparent may request possession of or access to a grandchild in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit.

(c) In a suit described by Subsection (a), the person filing the suit must execute and attach an affidavit on knowledge or belief that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being. The court shall deny the relief sought and dismiss the suit unless the court determines that the facts stated in the affidavit, if true, would be sufficient to support the relief authorized under Section 153.433.

Additionally, section 102.003 provides general standing to file suit, but neither Grandmother nor Mother argues this section applies to the record here.  TEX. FAM. CODE ANN. § 102.003 (West 2016).

court's judgment. *Id.* We review the trial court's implied factual findings for legal and factual sufficiency, and we review the trial court's implied legal conclusions de novo. *Id.*

Mother argues that Grandmother failed to establish standing to intervene in this case. She contends that the family code requires a grandparent seeking access to or conservatorship of a grandchild to show that the child would suffer significant impairment unless the grandparent's requested relief is granted. Mother bases her argument in large part on sections 102.004(b) and 153.432(c). FAM. §§ 102.004, 153.432. Section 102.004(b) permits a court to allow a grandparent to intervene so long as there is satisfactory proof that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the grandchild's physical health or emotional development. *Id.* § 102.004(b). Section 153.432(c) requires a grandparent filing a suit for possession and access to a grandchild to execute and attach a supporting affidavit alleging that denial of possession of or access to the grandchild by the grandparent would significantly impair the child's physical health or emotional well-being. *Id.* § 153.432. As detailed below, we agree with Mother that a finding of significant impairment of the child's physical health or emotional development is necessary to establish standing to intervene.

## I. Grandmother's Standing through Consent

Grandmother urges that we might avoid the statutory standing question all together as she alleges Mother and Father consented to her intervention. She points to section 102.004(a)(2) that permits a grandparent to file an original suit requesting managing conservatorship if there is satisfactory proof to the court that the parents or managing conservator consented to the suit. FAM. § 102.004(a)(2). Grandmother argues first that we may presume Mother's consent from the fact that she failed to provide transcripts from all the hearings conducted in this case. She points to four pretrial hearings that are noted on the court's docket for which Mother has not

provided transcripts. Grandmother next argues Mother actually consented to her standing by consenting to temporary orders providing Grandmother with court–ordered access to J.R.W. She also points to Mother's later pleadings in which she stated that "[t]he Court has jurisdiction of this case and of all the parties . . . ." and requested Grandmother be "appointed as Intervenor with limited supervised visitation rights for the child." Finally, Grandmother argues Father expressly or impliedly consented to her intervention because he actively participated in the lawsuit and filed pleadings referring to Grandmother as an intervenor without objecting to her standing.

Mother filed a pro se motion to strike Grandmother's invention in which she challenged Grandmother's standing to seek either access or conservatorship. Mother made repeated efforts to be heard on her motion to strike at the trial court's hearing on January 2014 on temporary orders, but the trial court informed Mother she would have to set a separate hearing for her motion to strike. On April 17, 2014, at Mother's requested hearing on her motion to strike, she again argued that Grandmother lacked standing to intervene. On May 1, 2014, the trial court denied Mother's motion to strike. Mother raised the issue of Grandmother's standing once again at trial and once more in her motion for new trial. Grandmother fails to point to authority from either the supreme court or this Court in support of her argument that we might imply consent in these circumstances, and we find the record sufficiently developed and clear to reject it. Accordingly, we reject Grandmother's arguments regarding consent and turn to Mother's arguments.

## II.     Pleadings and Evidence to Establish Standing

Mother complains that many of Grandmother's allegations in her affidavit and amended affidavit complained of events that took place after her original petition to intervene was filed and argues they should not be considered in determining whether there is significant impairment so as to support standing.

Generally, standing is determined at the time suit is filed in the trial court. Where the evidence supports standing as of that moment, subsequent events will not deprive the court of subject matter jurisdiction. *See In re M.P.B.*, 257 S.W.3d 804, 808 (Tex. App.—Dallas 2008, no pet.). When, as here, the trial court makes no separate findings of fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment. *See id.* Further, we note the rules of civil procedure authorize amendments to pleadings and that Mother's first amended petition and supporting affidavits were filed prior to the trial court's hearing on Mother's motion to strike. *See* TEX. R. CIV. P. 65 (substituted instrument takes place of original). Therefore, we consider Grandmother's amended pleadings, not just Grandmother's original petition in intervention, to determine whether the record supports the finding that she had standing at the time she initially intervened.

## III.     Sufficiency of Proof to Establish Grandmother's Standing

Grandmother had the burden of establishing her standing below.[3] *See Orix Capital Markets, LLC v. Am. Realty Trust, Inc.*, 356 S.W.3d 748, 752 (Tex. App.—Dallas 2011, pet. denied). While Mother bases her arguments on sections 153.432 and 102.004, Grandmother asserts "the Grandparent Access statute," which we construe to mean section 153.432, is not applicable in this case because she was awarded possession as a conservator rather than mere access as permitted in section 153.432. *See* FAM. § 153.432. We note that despite the fact that Grandmother's attorney represented to the trial judge at the hearing on Mother's motion to strike that Grandmother was not seeking parental rights but only possession of or access to J.R.W., in her pleadings, Grandmother sought conservatorship, and by the time the case proceeded to trial,

---

[3] Mother complains of the following alleged deficiencies in Grandmother's supporting evidence: (1) Grandmother failed to submit a supporting affidavit required by section 153.432 when she filed her original petition to intervene, (2) the affidavit attached to Grandmother's first amended petition to intervene failed to set forth facts to support the claim that denial of possession of or access to the child by Grandmother would significantly harm J.R.W.'s physical health or emotional well-being, (3) the amended affidavit and other documents Grandmother provided were insufficient to establish her standing, and (4) Grandmother's second supplemental petition to intervene failed to include any affidavit or allegations in support of her requests for access or conservatorship.

all understood Grandmother sought to be appointed as joint managing conservator of J.R.W. Accordingly, we will analyze whether Grandmother had standing to intervene under section 102.004.

Section 102.004 of the family code provides that:

> the court may grant a grandparent or other person deemed by the court to have had substantial past contact with the child leave to intervene in a pending suit . . . if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development.

FAM. § 102.004(b).

Grandmother's First Amended Petition in Intervention filed December 17, 2013, included a supporting affidavit that alleged following facts to support her petition.[4]

- Mother had "relied heavily upon [Grandmother] for raising [J.R.W.] from the day he was born."

- Mother depended on Grandmother to supply J.R.W. diapers and formula when he was an infant.

- Grandmother continued to help Mother with her expenses after she and Father separated.

- J.R.W. had formed a "very strong bond" with Grandmother and her husband ("Grandfather") when Grandmother acted as a primary child care provider in the summer and as a secondary child care provider when Mother worked late.

- Grandmother's home "was a refuge for [J.R.W.] to play and be on a regular schedule."

- J.R.W.'s association with her and Grandfather would maintain his ties with his extended family.

- Mother intended to exclude Grandmother and Grandfather from access to J.R.W.

- Father lacked the ability to make parenting decisions concerning J.R.W.

---

[4] While the affidavit was titled as "in support of possession or access by grandparent" and alleged that denial of Grandmother's possession of or access to J.R.W. would significantly impair his physical health or emotional well-being, it is still evidence in the record from which we may draw every reasonable inference in favor of the trial court's judgment. *See In re M.P.B.*, 257 S.W.3d at 808.

- Father's problems with drugs and mental illness were "so bad it is paramount that [Mother] and [Grandmother] work together in the best interest of [J.R.W.]"

Grandmother later filed an amended affidavit in which she alleged the following additional facts.

- Mother had filed multiple false statements about Grandmother's behavior and character.

- Mother had made past accusations of child abuse and molestation of J.R.W. that had been "ruled out" by child protective agencies.

- Mother had accused a court–appointed visitation supervisor of allowing Father to molest J.R.W.

- Mother and Father "have demonstrated unstable psychological behavior dangerous to the child," specifically Father's struggles with substance abuse and depression and Mother's pattern of "blow-ups and mood swings" each time she denied a court-ordered visitation.

As noted, the trial court did not enter findings of fact in connection with its original standing decision or in rendering judgment. As we focus our analysis on the judgment, we are obliged to draw every reasonable inference supported by the record in favor of the trial court's judgment. *See In re M.P.B.*, 257 S.W.3d at 808. To be sure, Grandmother did not allege specifically when many of the events detailed above took place, we conclude from our review of the record that the trial court may have reasonably construed all of the foregoing to have occurred at or before the time Grandmother filed her original petition in intervention. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993).

The evidence readily supports the trial court's implied findings that Grandmother had substantial past contact with J.R.W. and that there was satisfactory proof to the trial court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the J.R.W.'s physical health or emotional development. *See In re M.P.B.*, 257 S.W.3d at 808 (concluding record contained legally and factually sufficient evidence to support implied findings to support standing under section 102.003 of the family

–8–

code).  We therefore conclude the trial court did not err in finding that Grandmother had standing to seek conservatorship of J.R.W. pursuant to section 102.004(b).

We overrule Mother's first issue.

**GRANDMOTHER'S APPOINTMENT AS JOINT MANAGING CONSERVATOR OF J.R.W.**

In her second issue, Mother argues the trial court abused its discretion in awarding Grandmother joint managing conservatorship of J.R.W.

## I.    Standard of Review & Applicable Law

We review a trial court's determination of conservatorship for an abuse of discretion.  *In re C.M.*, No. 05-12-00380-CV, 2014 WL 470774, at *3 (Tex. App.—Dallas Feb. 6, 2014, no pet.) (mem. op.).  Under that standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but are relevant in assessing whether the requisite abuse of discretion is extant.  *See id.*  We review the evidence in the light most favorable to the order and indulge every presumption in favor of the trial court's ruling.  *Id.*  If some probative and substantive evidence supports the order, there is no abuse of discretion.  *Id.*  Because there are no findings of fact or conclusions of law, it is implied that the trial court made all findings necessary to support the trial court's order.  *Id.*

Mother argues the trial court erroneously failed to consider or make any findings regarding "the significant-impairment standard" and that the trial court instead only stated it would rule based on what was in the best interest of J.R.W.[5]  Mother relies on section 153.131 of the family code and the U.S. Supreme Court's decision in *Troxel*, either or both of which she urges require the trial court to make a finding of significant impairment of the child's physical

---

[5] Mother also contends that the final order does not comply with section 153.433 because it does not include findings mandated by the statute, while Grandmother urges that section 153.433 is irrelevant or moot because she was awarded possession as a conservator rather than through grandparent access.  An order awarding access to or possession of a grandchild over a parent's objections must include certain findings, including that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being.  *See* TEX. FAM. CODE ANN. § 153.433 (West 2016).  Because we are reviewing the judgment, we will address the standards applicable to it, focusing on the award of conservatorship it decreed, which unlike section 153.433 mandates no explicit findings.  *See id*. § 153.131.

health or emotional development to support its judgment.  *See* TEX. FAM. CODE ANN. § 153.131 (West 2016); *Troxel v. Granville*, 530 U.S. 57 (2000).  Section 153.131 provides that unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.  FAM. § 153.131(a).

Grandmother, in contrast, urges that she did not have "any burden to prove significant impairment" because she did not seek to replace Mother as managing conservator but instead sought to share joint managing conservatorship with her.  She argues that under the supreme court opinion's in *Brook v. Brook*, the test for the appointment of a parent and nonparent as joint managing conservators is whether the appointment would be in the best interest of the child regardless of any impairment of the child's physical health or emotional development.  881 S.W.2d 297, 299 (Tex. 1994) (applying former § 14.01(b)(1) recodified at § 153.131(a)).[6]

As there are no findings of fact or conclusions of law, it is implied that the trial court made all findings necessary to support the trial court's order.  *See In re C.M.*, 2014 WL 470774, at *3.  Here, we need not decide which standard must be applied because the evidence in the record supports an implied finding under the higher standard—that Mother's appointment as sole managing conservator would result in significant impairment of J.R.W.'s emotional development, if not his physical health.

---

[6] Mother points us to *Critz v. Critz*, which held that enactment of section 153.131 supplanted the supreme court's decision in *Brook v. Brook* to employ a best-interest standard.  297 S.W.3d 464, 471 (Tex. App.—Fort Worth 2009, no pet.).  She argues that the U.S. Supreme Court's decision interpreting the Due Process Clause in *Troxel* would have the same effect.  *But see Lubbock Cnty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) ("It is not the function of the court of appeals to abrogate or modify established precedent.  That function lies solely with [the supreme court.]").

## II.     Application of Law to Facts

We begin by noting that the evidence Grandmother put forth to establish standing supported the trial court's implied finding that, at the time Grandmother intervened, appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the J.R.W.'s physical health or emotional development. *See* FAM. § 102.004(b). That evidence included Mother's multiple allegations of past child abuse and molestation of J.R.W. that were "ruled out" by child protective agencies and that she had demonstrated unstable psychological behavior dangerous to J.R.W. and a pattern of mood swings and outbursts each time she refused to comply with a court-ordered visitation. While recognizing the similarities between the burdens to be met under sections 102.004 and 153.131, we recognize each involves a separate inquiry, and therefore we review the remaining evidence in the record, including events that took place after Grandmother's intervention and before the trial court's judgment. *Compare* FAM. § 102.004(b) *with* FAM. § 153.131(a).

During 2012, 2013, and 2014, Child Protective Services received, investigated, and ultimately ruled out several allegations of sexual abuse of J.R.W. by Father, Mother's stepfather, Grandmother, and Grandfather. A parenting facilitator testified that if J.R.W. had not been sexually abused, his emotional development could be adversely affected by repeated false suggestions of sexual abuse and the resulting investigations. Although she admitted she had not met J.R.W., the parenting facilitator further testified that there was a high probability that emotional abuse of J.R.W. could occur based on her review of the family's records and the dynamics within the family. Another concern is Mother's relationship with her stepfather, a registered sex-offender who sexually abused Mother when she was a child. Mother requested the trial court order supervised visitation between her stepfather and J.R.W., and Mother admitted at a hearing on her motion for new trial that she had permitted J.R.W. to be around her

–11–

stepfather "a few times" although she did not leave J.R.W. alone with him. Additionally, the parenting facilitator testified that Mother insisted her stepfather be part of the counseling process and that Mother believed her stepfather had changed. Both the parenting facilitator and the amicus attorney recommended the paternal grandparents should assume Father's role and be appointed joint managing conservators with Mother.[7] The parenting facilitator testified that the structure in place at trial—Mother as sole managing conservator with Grandmother having scheduled visitation—did not work to provide a healthy structure for J.R.W.[8] She advised that due to the extremely contentious relationship between Mother and the paternal grandparents, there should be no contact or interaction at all between them except in cases of emergency.

We conclude that there is sufficient evidence to support an implied finding that Mother's appointment as sole managing conservator would result in significant impairment of J.R.W.'s emotional development, if not his physical health. *In re C.M.*, 2014 WL 470774, at *3. While each factor discussed above—whether it be the repeated allegations of abuse to CPS that have been ruled out or Mother's request to reunify J.R.W. with her stepfather—might individually not be enough to overcome the parental presumption, taking them together in the aggregate, we are not convinced the trial court abused its discretion in appointing Mother and Grandmother as joint managing conservators.

We overrule Mother's second issue.

### VIOLATIONS OF MOTHER'S RIGHT TO DUE PROCESS

In her third issue, Mother argues the trial court violated her due-process rights in four ways: (1) at two hearings, the trial court prevented Mother from presenting her arguments about

---

[7] We note that Grandfather is not a party to this suit at trial or on appeal and was not appointed as a joint managing conservator of J.R.W.

[8] Referring to Mother's psychological evaluation, the parenting facilitator testified that while Mother attempted to communicate with others, she had strong feelings of insecurity and major issues with trust that led to "the same dynamics with [the parenting facilitator] that she has with everyone else: one day she loves me, the next day she thinks I'm the worst thing in the world."

–12–

standing; (2) at a status hearing, the trial court denied Mother's requests to question witnesses; (3) at trial, the trial court prevented Mother from testifying regarding her fitness as a parent; and (4) at trial, the trial court prevented Mother from calling on additional witnesses to testify as to her character.

## I.     Limitation of Mother's Arguments at Pre-trial Hearings

Mother complains about two hearings at which she argues the trial court declined to entertain her arguments regarding Grandmother's standing.  At a hearing on January 16, 2014, the judge first stated the hearing was to consider Grandmother's motion for additional temporary orders but then noted she had not granted or denied Grandmother's petition to intervene.  Mother attempted to raise her objections to Grandmother's standing, but the trial court asked to first hear the statutory basis for Grandmother's petition.  After Grandmother's attorney's arguments, the trial court discussed what temporary orders Grandmother's motion requested and informed Mother she needed to set a hearing on her motion to strike Grandmother's petition to intervene.  At a separate hearing on April 17, 2014, the trial court heard three motions, including Mother's motion to strike.  Mother complains that when she attempted to argue Grandmother's lack of standing to intervene, the trial court "declined to entertain her arguments" and "curtailed her opportunity to present her arguments."

The record reflects that Mother was in fact allowed to make arguments at the April 17, 2014 hearing on her motion to strike, but the trial court rejected her arguments as not relevant.[9] But even if the trial court had not allowed Mother to present arguments, not every hearing called

---

[9] THE COURT: . . . So what is the purpose of the motion to strike?

. . . .

MOTHER: [Grandmother] has no standing.  She did file 271 days too late.  She had no consistent contact with the child before that.

THE COURT: Okay.  And if she were seeking to come in and get rights and duties, I could follow your argument. . . . What you're arguing is a legal argument against her intervening and what we would consider a grandparent coming into the shoes of a parent.  That is not what she is seeking here.  She's just seeking access to be able to see the child, which was already agreed in the prior order.

–13–

for under every rule of civil procedure necessarily requires an oral hearing. *See Cire v. Cummings*, 134 S.W.3d 835, 843–44 (Tex. 2004). In any event, the record reflects the trial court judge at the April 17, 2014 hearing informed the parties she had read the pleadings on file, which included Mother's motion to strike in which, among other things, she set forth similar arguments as she has made here on appeal.[10] Thus, we cannot conclude Mother was denied due process by any limitation of her oral arguments at the hearings.

## II.     Exclusion of Mother's Evidence at Status Hearing and at Trial

We turn to Mother's arguments that the trial court erred by preventing Mother from questioning witnesses, testifying as to her fitness as a parent, and calling additional witnesses to testify as to her fitness as a parent. An appellate court does not reach the question of whether evidence was erroneously excluded unless the complaint has first been preserved for review. *Sink v. Sink*, 364 S.W.3d 340, 346 (Tex. App.—Dallas 2012, no pet.). To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the trial court. *Id.* at 347. The reviewing court may be able to discern from the record the nature of the evidence and propriety of the trial court's ruling, but without an offer of proof or bill of exception, we can never determine whether exclusion of the evidence was harmful. *Id.* Mother did not make any offer of proof before the trial court and did not file a formal bill of exception, and thus failed to preserve this issue for appeal. *See id.*

We overrule Mother's third issue.

---

[10] The case was transferred from the 469th district court to the 199th district court between the January and April hearings, so a different judge presided over each of these two hearings.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

151479F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF J.R.W., A CHILD

No. 05-15-01479-CV

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 469-56410-2010.
Opinion delivered by Justice Schenck, Justices Bridges and Lang-Miers participating.

In accordance with this Court's May 19, 2017 order, we **VACATED** the judgment of March 21, 2017. This is now the judgment of the Court.

The judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee KARAN WINDHAM recover her costs of this appeal from appellant JENNIFER LYNN BRATTAIN.

Judgment entered this 20th day of July, 2017.